ALLEN OVERY SHEARMAN STERLING US LLP
Fredric Sosnick (New York Bar No. 2472488) (*admitted pro hac vice*)
Sara Coelho (New York Bar No. 4530267) (*admitted pro hac vice*)
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
fsosnick@aoshearman.com
sara.coelho@aoshearman.com

McDONALD CARANO LLP
Ryan J. Works (NSBN 9224)
Amanda M. Perach (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Lead Case No.: 24-50566-hlb |
|---|---|
| | Chapter 11 |
| ☒ NEVADA COPPER, INC. | |
| ☒ NEVADA COPPER CORP. | Jointly Administered with: |
| ☒ NC DITCH COMPANY LLC | Case No. 24-50567-hlb |
| ☒ NC FARMS LLC | Case No. 24-50568-hlb |
| ☒ LION IRON CORP. | Case No. 24-50569-hlb |
| ☒ 0607792 B.C. LTD. | Case No. 24-50570-hlb |
| | Case No. 24-50571-hlb |
| Debtors.[1] | |
| | **Hearing Date: TBD** |
| | **Hearing Time: TBD** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) (A) APPROVING THE
AUCTION AND BIDDING PROCEDURES, (B) APPROVING STALKING
HORSE BID PROTECTIONS, (C) SCHEDULING CERTAIN DATES AND
DEADLINES WITH RESPECT THERETO AND AN AUCTION,
(D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
(E) APPROVING THE FORM APA, AND (II) (A) ESTABLISHING NOTICE
AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF
CONTRACTS AND LEASES, (B) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF ASSUMED CONTRACTS, (C) AUTHORIZING
THE SALE OF ASSETS AND (III) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their registration numbers in the jurisdiction in which they are organized are: Nevada Copper, Inc. (1157) (Nevada); Nevada Copper Corp. (5323) (British Columbia); 0607792 B.C. Ltd. (2524) (British Columbia); Lion Iron Corp. (2904) (Nevada); NC Farms LLC (0264) (Nevada); and NC Ditch Company LLC (4396) (Nevada).

# Table of Contents

|  |  | Page |
|---|---|---|
| Relief Requested | | 1 |
| Jurisdiction and Venue | | 2 |
| Disclosures Under Local Rule 6004 | | 3 |
| Background | | 3 |
| The Debtors' Sale Process | | 4 |
| I. | The Bidding Procedures | 8 |
| | A. | Key Dates and Deadlines for the Sale and Auction | 14 |
| | B. | Form and Manner of Sale Notice | 16 |
| | C. | Assumption and Assignment Procedures | 17 |
| | D. | Provisions Under Local Rule 6004 | 18 |
| Basis for Relief | | 19 |
| II. | Approval of the Bidding Procedures Is in the Best Interests of the Debtors' Estates and Should be Approved | 19 |
| III. | The Bid Protections Have a Sound Business Purpose and Should Be Approved. | 21 |
| IV. | The Form and Manner of Notice Should Be Approved | 23 |
| V. | Assumption and Assignment Procedures Are Appropriate and Should Be Approved | 24 |
| VI. | The Sale Transaction Should be Approved as an Exercise of Sound Business Judgment. | 25 |
| | A. | The Debtors Have Demonstrated a Sound Business Justification for the Proposed Sale. | 26 |
| | B. | Adequate and Reasonable Notice of the Auction and Sale Will Be Provided. | 27 |
| | C. | The Proposed Sale Process Will Produce a Fair and Reasonable Purchase Price for the Assets. | 28 |
| | D. | The Sale Has Been Proposed In Good Faith Without Collusion and the Successful Bidder Is a "Good-Faith Successful Bidder" | 29 |
| | E. | A Sale Free and Clear of All Liens, Claims, Interests, or Other Encumbrances, to the Fullest Extent Permitted by the Bankruptcy Code, Is Appropriate. | 31 |
| VII. | Assumption and Assignment of Assigned Contracts Should Be Approved. | 32 |

A.   The Assumption and Assignment Procedures Reflect the Debtors' Reasonable Business Judgment. ..............................................................32

B.   Defaults Will Be Cured in Connection with the Sale Process. .............................33

C.   Adequate Assurance of Future Performance Will Be Provided to Counterparties. ....................................................................................................34

Reservation of Rights....................................................................................................36

Request for Waiver of Bankruptcy Rules 6004(h) and 6006(d) ....................................36

Notice............................................................................................................................36


Exhibit 1      Proposed Order

Exhibit A      Bidding Procedures

Exhibit B      Form of Sale Notice

Exhibit C      Form of Assumption and Assignment Notice

Exhibit D      Form APA

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*In re Abbotts Dairies of Pa., Inc.*,
    788 F.2d 143 (3d Cir. 1986)................................................................26, 30

*In re America West Airlines, Inc.*,
    166 B.R. 908 (Bankr. D. Ariz. 1994)....................................................22

*In the Matter of Andy Frain Services, Inc.*,
    798 F.2d 1113 (7th Cir. 1986) .............................................................30

*Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship*,
    526 U.S. 434 (1999) ............................................................................28

*In re Bardos, No. 6:10-BK-41455-SY*,
    2016 WL 1161225 (B.A.P. 9th Cir. Mar. 23, 2016) ............................26

*In re Bon Ton Rest. & Pastry Shop, Inc.*,
    53 B.R. 789 (Bankr. N.D. Ill. 1985) ...................................................35

*In re Bygaph, Inc.*,
    56 B.R. 596 (Bankr. S.D.N.Y. 1986) ..................................................35

*Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*,
    103 B.R. 524 (Bankr. D.N.J. 1988) .....................................................35

*In re Cash Cloud Inc. dba Coin Cloud*, No. 23-10423 (Bankr. D. Nev. Apr. 27, 2023)..............21

*In re Catalina Sea Ranch, LLC*,
    No. 2:19-BK-24467-NB, 2020 WL 1900308 (Bankr. C.D. Cal. Apr. 13, 2020) .............25, 27

*In re Celsius Network LLC*,
    No. 22-10964 (MG), 2022 WL 14193879 (Bankr. S.D.N.Y. Oct. 24, 2022).........................20

*Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*,
    94 B.R. 343 (E.D. Pa. 1988) ...............................................................31

*In re Claar Cellars LLC, No. 20-00044-WLH11*,
    2020 WL 1238924 (Bankr. E.D. Wash. Mar. 13, 2020).....................................25

*In re DeBilio*,
    No. BAP CC-13-1441, 2014 WL 4476585 (B.A.P. 9th Cir. Sept. 11, 2014).........................26

*In re Dura Auto. Sys., Inc.*,
    No. 06-11202 (KJC), 2007 WL 7728109 (Bankr. D. Del. Aug. 15, 2007) ...........................20

*In re Edwards*,
    228 B.R. 552 (Bankr. E.D. Pa. 1998) ...................................................................20

*In re Energy Future Holdings Corp.*,
    904 F.3d 298 (3d Cir. 2018)...........................................................................22

*In re Food Barn Stores, Inc.*,
    107 F.3d 558 (8th Cir. 1997) .........................................................................26

*In re Golden Empire Air Rescue, Inc.*,
    No. BAP EC-07-1086, 2007 WL 7540946 (B.A.P. 9th Cir. Oct. 25, 2007) ..............20, 26, 29

*Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*,
    318 U.S. 523 (1943)..................................................................................32

*In re Hupp Indus., Inc.*,
    140 B.R. 191 (Bankr. N.D. Ohio 1992) ...........................................................23

*In re Integrated Res., Inc.*,
    147 B.R. 650 (S.D.N.Y. 1992)................................................................22, 26

*In re Kellstrom Indus., Inc.*,
    282 B.R. 787 (Bankr. D. Del. 2002) ..............................................................31

*In re Las Vegas Monorail Company*,
    Case No. 20-14451 (NMC) (Bankr. D. Nev. Sept. 30, 2020), ECF No. 98 ...........................21

*In re Lionel Corp.*,
    722 F.2d 1063 (2d Cir.1983).................................................................23, 25, 26

*In re Luce Indus., Inc.*,
    8 B.R. 100 (Bankr. S.D.N.Y. 1980) ...............................................................34

*In re Metal Partners Rebar, LLC, et al.*,
    Case No. 20-12878 (ABL) (Bankr. D. Nev. Aug 11, 2020) .......................................21

*In re Natco Indus., Inc.*,
    54 B.R. 436 (Bankr. S.D.N.Y. 1985) ..............................................................35

*In re O'Brien Env't Energy, Inc.*,
    181 F.3d 527 (3d Cir. 1999)...................................................................22, 23

*Off. Comm. of Unsecured Creditors v. Interforum Holding LLC*,
    No. 11-CV-219, 2011 WL 2671254, No. 11- 219 (E.D. Wis. July 7, 2011)..........................22

*Pelican Homestead v. Wooten (In re Gabel)*,
    61 B.R. 661 (Bankr. W.D. La. 1985)..............................................................24

*In re Penn Traffic Co.*,
    524 F.3d 373 (2d Cir. 2008)..................................................................................33

*In re Pomona Valley Med. Grp., Inc.*,
    476 F.3d 665 (9th Cir. 2007) ..............................................................................32

*In re Realia, Inc.*,
    2012 Bankr. LEXIS 1083, 2012 WL 833372 (9th Cir. BAP), *aff'd*, 2014 U.S. App.
    LEXIS 7138, 2014 WL 1466227 (9th Cir.) ........................................................31

*In re Red Rose, Inc.*,
    Case No. 20-12814 (MKN) (Bankr. D. Nev. Nov. 6, 2020), ECF No. 1281 .........21

*In re Reliant Energy Channelview LP*,
    594 F.3d 200 (3d Cir. 2010)..................................................................................22

*In re S.N.A. Nut Co.*,
    186 B.R. 98 (Bankr. N.D. Ill. 1995) ....................................................................22

*In re Sasson Jeans, Inc.*,
    90 B.R. 608 (S.D.N.Y. 1988)................................................................................30

*Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*,
    872 F.2d 36 (3d Cir. 1989)....................................................................................32

*In re Shary*,
    152 B.R. 724 (Bankr. N.D. Ohio 1993) ................................................................24

*Silverman as Tr. of Stanley C. Silverman Revocable Tr. , dated Aug. 26, 2006 v. Birdsell*,
    796 F. App'x 935 (9th Cir. 2020)..........................................................................21

*Simantob v. Claims Prosecutor, LLC (In re Lahijani)*,
    325 B.R. 282 (9th Cir. BAP 2005)............................................................21, 25, 28

*In re Slates*,
    No. BAP EC-12-1168-KIDJU, 2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) .............26

*In re Station Casinos, Inc.*,
    No. 09-52477-GWZ, 2009 WL 8519660 (Bankr. D. Nev. July 28, 2009) .............................33

*In re Tabone, Inc.*,
    175 B.R. 855 (Bankr. D.N.J. 1994) ......................................................................24

*In re Thomas*,
    287 B.R. 782 (B.A.P. 9th Cir. 2002)......................................................................26

*In re Trans World Airlines, Inc.*,
    No. 01-00056, 2001 WL 1820326 (Bankr. D. Del. 2001)................................28, 29

*In re Walter*,
   83 B.R. 14 (B.A.P. 9th Cir. 1988) .........................................................................25

*In re Wilde Horse Enterprises, Inc.*,
   136 B.R. 830 (Bankr. C.D. Cal. 1991) ..................................................................26

*In re X10 Wireless Tech., Inc.*,
   No. BAP WW-04-1328-PST, 2005 WL 6960205 (B.A.P. 9th Cir. Apr. 5, 2005) .................32

**Statutes**

11 U.S.C. § 105(a) .....................................................................................19, 25

11 U.S.C. § 332 ................................................................................................19

11 U.S.C. § 363(b) ....................................................................................... *passim*

11 U.S.C. § 365(f)(2)(B) ................................................................................ *passim*

28 U.S.C. §§ 157 and 1334 ...............................................................................2

28 U.S.C. §§ 1408 and 1409 .............................................................................2

**Other Authorities**

Fed. R. Bankr. P. 6004(h) ...............................................................................36

Fed. R. Bankr. P. 6006(d) ...............................................................................36

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Nevada Copper, Inc., and its affiliates that are debtors and debtors in possession

2    (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"),

3    respectfully represent in support of this motion (the "***Motion***") as follows:

4    **Relief Requested**

5    1.    The Debtors request entry of an order, substantially in the form attached hereto as

6    **Exhibit 1** (the "***Bidding Procedures Order***"), among other things:  (i) approving the proposed

7    marketing, auction, and bidding procedures attached as **Exhibit A** to the Order (the "***Bidding***

8    ***Procedures***"), by which the Debtors will solicit and select the highest or otherwise best offer(s)

9    for a sale or disposition of all or substantially all of the Debtors' assets (the "***Assets***") or any portion

10   thereof (collectively, the "***Sale***," and each such sale transaction, a "***Sale Transaction***");

11   (ii) establishing certain dates and deadlines related thereto and scheduling an auction or auctions,

12   if any, for the Sale (the "***Auction***"); (iii) approving the manner of notice of the Auction and sale

13   hearing (the "***Sale Hearing***") as may be necessary; (iv) approving a form of asset purchase

14   agreement, substantially in the form attached to the Proposed Order as **Exhibit D** (the "***Form***

15   ***APA***");[2] (v) approving procedures for the assumption and assignment of certain executory

16   Contracts (as defined below) and unexpired Leases (as defined below) in connection with the Sale,

17   if any; (vi) approving the break-up fee and expense reimbursements relating to potential stalking

18   horse bidders if the Debtors determine to enter into such an arrangement with a bidder for the

19   Assets (the "***Stalking Horse Bid Protections***"); and (vii) granting related relief.

20   2.    Additionally, the Debtors will seek entry of one or more orders at the Sale Hearing

21   (the "***Sale Order***") (i) authorizing and approving the Sale with the Successful Bidder on the terms

22   substantially set forth in the Successful Bid; (ii) authorizing and approving the sale of the Debtors'

23   Assets free and clear of liens, claims, encumbrances, and other interests to the extent set forth in

24   an asset purchase agreement with a Successful Bidder; (iii) authorizing the assumption and

25

26   _____

27   [2]   Prior to the hearing to consider the Bidding Procedures Order, the Debtors will file a supplement to this Motion
     on the docket of these Chapter 11 Cases containing the Form APA.

28

assignment of executory contracts and leases as set forth in an asset purchase agreement with a Successful Bidder; and (iv) granting any related relief.

3.     In support of this Motion, the Debtors rely upon the *Omnibus Declaration of Gregory J. Martin in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [ECF No. 4] (the "**First Day Declaration**"),[3] filed on June 10, 2024, and the *Declaration of Zul Jamal in Support of the Debtors' Motion for Entry of an Order (I) (A) Approving the Auction and Bidding Procedures; (B) Approving Stalking Horse Bid Protections; (C) Scheduling Certain Dates and Deadlines with Respect Thereto and an Auction; (D) Approving the Form and Manner of Notice Thereof; (E) Approving the Form APA; and (II) (A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases; (B) Authorizing the Assumption and Assignment of Assumed Contracts; (C) Authorizing the Sale of Assets; and (III) Granting Related Relief* (the "**Sale Declaration**"), which was filed contemporaneously with this Motion. The First Day Declaration and the Sale Declaration are incorporated herein by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Jurisdiction and Venue

4.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein are sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004 and 3017 of the *Local Rules of Bankruptcy Practice for the United States Bankruptcy Court of the District of Nevada* (the "**Local Rules**").

5.     Pursuant to Local Rule 9014.2, the Debtors consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that, absent consent of

---

[3] Capitalized terms not otherwise defined herein shall have the meaning set forth in the First Day Declaration.

2

the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Disclosures Under Local Rule 6004

6.      Local Rule 6004 requires, among other things, that a debtor include the "material terms" of a proposed sale in any sale motion.  As set forth above, the Debtors and their professionals have begun a comprehensive marketing of the Debtors' assets.  Nevertheless, the Debtors do not, as yet, have an actionable offer in hand.  Moreover, because the Debtors continue to have discussions with parties in interest, they cannot, as yet, identify with any reasonable specificity the terms of the Sale of the Assets.  Accordingly, the Debtors are unable at this time to make the disclosures required under Local Rule 6004.  In the event the Debtors secure one or more stalking horse bidders (each, a "***Stalking Horse Bidder***"), the Debtors will file such Stalking Horse Bidder's purchase agreement and make the requisite disclosures.

### Background

7.      On June 10, 2024 (the "***Petition Date***"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.  On June 18, 2024, the Court entered orders authorizing the joint administration of these Chapter 11 Cases for procedural purposes only, pursuant to Bankruptcy Rule 1015(b).  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

8.      The Debtors have been in the business of mining copper, and other minerals, and operating a processing plant that refines copper ore into copper concentrate, with the bulk of the Debtors' operations focused on their Pumpkin Hollow project (the "***Project***"), which is located outside of Yerington, Nevada.  The Project, which contains substantial mineral reserves and resources, including not only copper, but gold, silver, and iron magnetite, consists of an underground mine and processing facility, together with an open-pit project that is in the pre-

feasibility stage of development.  The Debtors, in the period leading up to the commencement of the Chapter 11 Cases, operated under significant liquidity constraints.  In an effort to conserve liquidity, the Debtors have suspended mining operations and the operation of their processing plant, as they pursue a sale of substantially all of their assets.

9.    Additional facts relating to the Debtors' business and capital structure, and the commencement of these Chapter 11 Cases, are set forth in the First Day Declaration.

**The Debtors' Sale Process**

10.    As described in the First Day Declaration, the Debtors commenced these Chapter 11 Cases several months after commencing a process to sell their businesses.  The Debtors believe that, building on the Prepetition Sale Efforts, pursuing an expedited and compressed process for the sale of substantially all of their assets in these Chapter 11 Cases (the "***Sale Process***") will maximize the value of their estates and preserve as many jobs as possible.

11.    In connection with their prepetition sale efforts, in October 2023, the Debtors engaged Citigroup Global Markets Inc. (the "***Prepetition Investment Banker***") as their investment banker and began to market their businesses.  As part of their prepetition sale efforts, the Debtors and the Prepetition Investment Banker contacted over 30 parties, and ultimately received four proposals from potential purchasers interested in acquiring substantially all or a portion of the Debtors' business.  After considering the proposals they received, the Debtors entered into two separate exclusivity agreements with the prospective purchasers regarding a proposal for additional financing or a potential sale of the Debtors' business.  Ultimately, however, the Debtors could not agree to terms with either of those prospective purchasers in a manner that would have allowed the Debtors to consummate a sale on a timeline that would have addressed their urgent funding needs.  In the absence of a sale agreement on a viable timeline, and facing diminishing financial support from their lenders, the Debtors determined it was necessary to file these Chapter 11 Cases in order to obtain additional time to continue pursuing a sale process under the protections provided by the Bankruptcy Code.  First Day Declaration ¶ 49.

12.     To fund a continued and updated process for the sale of their assets in chapter 11 (the "**Sale Process**") and the administration of the Chapter 11 Cases, the Debtors negotiated a senior secured $60 million postpetition financing facility (the "**DIP Facility**"), with two affiliates of Elliott Investment Management L.P. (together, the "**DIP Lenders**").  The DIP Facility contains certain milestones (the "**DIP Milestones**"), several of which relate to the timeline for the Debtors to effectuate the Sale, including:  (i) obtaining the entry of the Bidding Procedures Order not later than 45 days after the Petition Date (*i.e.*, July 25, 2024); (ii) obtaining the entry of a final Sale Order not later than 108 days after the Petition Date (*i.e.*, September 26, 2024); and (iii) consummating the sale of their Assets not later than 120 days after the Petition Date (*i.e.*, October 8, 2024).[4]

13.     Following the commencement of these Chapter 11 Cases, the Debtors, with the assistance of their proposed investment banker, Moelis & Company LLC ("**Moelis**"), launched a robust, but accelerated, third-party marketing process (the "**Marketing Process**") to solicit proposals for the sale of all or substantially all of the Debtors' Assets.  Beginning prior to the Petition Date, in preparation for outreach as part of the Marketing Process, the Debtors, with Moelis' assistance, prepared a confidential information memorandum with extensive information on the Assets and populated a virtual data room containing significant diligence materials.  To date, Moelis, on behalf of the Debtors, conducted initial outreach to at least 78 potential strategic and financial investors through introductory emails and calls.  Sale Declaration ¶ 7.  The Debtors' management, Moelis, and the Debtors' other advisors are holding numerous discussions with parties under confidentiality agreements ("**Confidentiality Agreements**") and responded to information requests as part of the diligence process to provide potential investors with information necessary to submit an indication of interest.

14.     The proposed Sale Process outlined in this Motion is the product of thoughtful discussion and planning by the Debtors.  Pursuant to this Motion, the Debtors seek to formalize

---

[4]     The DIP Milestones also required the filing of this Motion not later than 10 days after the Petition Date.

bidding procedures designed to maximize value for all stakeholders and minimize disruptions to the Debtors' restructuring efforts.  The Bidding Procedures attached to the Bidding Procedures Order as **Exhibit A** provide the Debtors with significant flexibility, while providing adequate time for the Debtors to market the Assets, receive and evaluate bids, execute a Stalking Horse APA (as defined in the Bidding Procedures) in their discretion, if applicable, and hold the Auction, as necessary, to determine the highest or otherwise best bid for the Assets.

15.    As described in the Sale Declaration, the Bidding Procedures were designed to generate the greatest level of interest and best value for the Assets while affording the Debtors flexibility to execute an asset sale as quickly and efficiently as possible, within the timeline imposed by the DIP Milestones.  The Debtors are confident the Bidding Procedures and other relief requested herein will facilitate the sale of the Assets for the highest or otherwise best value, preserve as many jobs as possible for the Debtors' employees, and maximize recoveries for their stakeholders.

16.    Despite the relatively short timetable from commencement to the proposed conclusion of the Sale Process that is contemplated by the DIP Milestones, the Debtors believe that a sale can be completed successfully within that timeframe, due in part, to the fact that they already are several months into a sale process.  In that regard, they already have a virtual data room (the "***Data Room***") up and running prior to the Petition Date that they can make available to potential bidder that sign non-disclosure agreements with the Debtors, which gives them a running start on the Sale Process.

17.    By this Motion, the Debtors seek approval of the Bidding Procedures to establish an open and competitive process for the solicitation, receipt, and evaluation of bids in a fair, accessible, and expeditious manner.  The Bidding Procedures contemplate that all parties that execute Confidentiality Agreements in accordance with the Bidding Procedures will have access to the Data Room throughout the Sale Process.  The Bidding Procedures provide for access to due diligence, the criteria for qualifying bidders and bids, the process for receiving and negotiating offers, the conduct of an auction (if any), the selection and approval of successful bidders, and

1    deadlines pertaining to the Bidding Procedures.  If approved, these procedures will enable the

2    Debtors to obtain bids from potential buyers in a manner that aligns with the Milestones and the

3    Debtors' chapter 11 strategy.

4          18.    The timeline set forth in the Bidding Procedures was calculated to balance the need

5    to provide adequate notice to parties in interest and any person or entity interested in purchasing

6    the Assets (a "***Potential Bidder***") with the need to run an expeditious and efficient sale process or

7    processes.  The Bidding Procedures are designed to generate the highest or otherwise best available

8    recoveries to the Debtors' stakeholders by encouraging prospective bidders to submit competitive,

9    value-maximizing bids.  Sale Declaration ¶ 12.  The Debtors believe that the Bidding Procedures

10   and the timeline set forth therein are in the best interests of the Debtors' estates, will establish the

11   extent of the market for the Debtors' Assets, and provide interested parties with sufficient

12   opportunity to participate.  *Id.*

13         19.    Through the Sale Process, the Debtors are seeking to sell all of their assets as a

14   going concern pursuant to the terms of the Form APA.  These assets include, but are not limited

15   to, the Debtors' going-concern business, real property, unexpired leases, executory contracts,

16   equipment, inventory, supplies, intellectual property, insurance proceeds, prepaid expenses and

17   deposits, and books and records (collectively, the "***Assets***"), in each case, free and clear of all liens,

18   claims, interests, or other encumbrances to the fullest extent permitted by the Bankruptcy Code.

19   The Debtors will consider bids that are made for all or substantially all of the Assets.  In addition,

20   the Debtors will consider bids for less than substantially all of the Assets, however, the value of

21   such bids will be evaluated against the Debtors intention to sell all of their Assets, and the value

22   and complexity of the sale of any Assets not included in a bid.  The Debtors will also consider bids

23   that take the form of a sale of stock of one or more subsidiaries.

24         20.    Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations

25   to maximize value and, as such, do not impair the Debtors' ability to consider all Qualified Bid

26   proposals.  The Bidding Procedures, therefore, preserve the Debtors right to modify the Bidding

27   Procedures in accordance with its terms as necessary or appropriate to maximize value for their

28

estates, after consultation with: (i) any official committee of unsecured creditors appointed in these cases and certain other Consultation Parties; and (ii) the DIP Lenders, except to the extent any such DIP Lender (or an affiliate of a DIP Lender) has indicated an interest in submitting, or has submitted, a Bid (collectively, the "***Consultation Parties***").

## I.    The Bidding Procedures

21.    The Bidding Procedures, which are attached as **<u>Exhibit A</u>** to the Bidding Procedures Order, are not restated herein in their entirety. Certain key terms of the Bidding Procedures, however, are summarized below:[5]

  i.    <u>Bid Deadline</u>: An Acceptable Bidder that desires to make a bid on one or more of the Assets shall deliver Binding Bids to the Bid Notice Parties no later than **September 6, 2024, at 12:00 p.m. (prevailing Pacific Time)** (the "***Bid Deadline***"); provided that the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain Potential Bidders, without further order of the Court, subject to providing notice to all Potential Bidders and the Consultation Parties.

  ii.    <u>Public Announcement of Auction</u>: No later than **July 29, 2024**, or as soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, on one occasion in *The Wall Street Journal (National Edition)*, to provide notice to any other potential interested parties, and (post the Sale Notice on their case website, **https://dm.epiq11.com/case/nevadacopper**.

  iii.    <u>Potential Bidder Qualifications</u>: To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Assets or part of the Assets (a "***Potential Bidder***") must deliver or have previously delivered to the Debtors the following preliminary documentation (collectively, the "***Preliminary Bid Documents***"):

    a.    an executed confidentiality agreement (a "***Confidentiality Agreement***") in form and substance acceptable to the Debtors;

    b.    sufficient information that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the Debtors' Assets, the adequacy of which must be acceptable to the Debtors, in consultation with the Consultation Parties;

---

[5]    This summary description and any further descriptions in this Motion of the provisions of the Bidding Procedures are for summary purposes only, do not restate the terms of the Bidding Procedures in their entirety, and in the event of any inconsistency with the Bidding Procedures, the Bidding Procedures will govern. Capitalized terms used but not defined in this section shall have the meanings ascribed to them in the Bidding Procedures.

c.   a statement indicating whether the Potential Bidder is requesting consent from the Debtors to partner with or otherwise work with any other interested party in connection with the potential submission of a joint Bid, the identity and domicile of any such party or parties, and a concise description of the nature of such partnership or joint Bid to the extent reasonably practicable, which the Debtors may approve in their reasonable business judgment, in consultation with the Consultation Parties, on a case-by-case basis; and

d.   any other information required (as determined by the Debtors in consultation with the Consultation Parties) to allow the Debtors, in consultation with the Consultation Parties, to determine that the Potential Bidder intends to receive due diligence information solely for purposes consistent with these Bidding Procedures.

iv.   <u>Qualified Bid Requirements</u>:  To participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors an irrevocable offer for the purchase of some or all of the Assets (each, a "***Bid***"), and shall meet the following criteria, in each case, on or prior to the Bid Deadline (as defined below):

a.   **Purchased Assets and Assumed Liabilities**: Each Bid must clearly state the following: (a) the particular Assets, or the portion thereof identified with reasonable specificity, to be purchased and (b) the liabilities and obligations to be assumed, including any debt and cure costs to be assumed;

b.   **Good Faith Deposit**: Except with respect to any Credit Bid, the Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "***Good Faith Deposit***") on terms acceptable to the Debtors in consultation with the Consultation Parties.  To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals 10% of the increased aggregate purchase price promptly and in no event later than one business day following the conclusion of the Auction;

c.   **Purchase Price**: Each Bid must (a) clearly set forth the purchase price to be paid, assuming a purchase of the applicable Assets and any assumption of liabilities (the "***Purchase Price***"), (b) identify separately the cash and non-cash components of the Purchase Price, and (c) indicate the allocation of the Purchase Price among the applicable Assets; *provided* that, for the avoidance of doubt, such allocation shall not prejudice the rights of any party in interest to contest such allocation. The Purchase Price should be a single point value in U.S. Dollars for the applicable Assets on a cash-free, debt-free basis.  Any Bid for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all Assets or whether the Qualified Bid should be viewed as a separate Bid for one or more sets of Assets.  The Debtors will consider the value to the estate as a whole when evaluating bids for only certain of the Assets.  The Debtors reserve the right, in consultation with the Consultation Parties, to ask any Acceptable Bidder to allocate the value ascribed to their Bid for any particular Asset and to inquire about any significant assumption on which such valuations are based;

9

d.    **Same or Better Terms; Bid Documents**: Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "***Bid Documents***"). The Bid Documents shall include: (a) the form of purchase agreement on which the Acceptable Bidder is prepared to transact, together with a redline of such agreement marked against the Form APA, (b) a schedule of contracts and leases to be assumed to the extent applicable to the Bid, (c) any other material documents integral to such Bid, and (d) a statement from the Acceptable Bidder that (1) it is prepared to enter into and consummate the transactions contemplated in the form purchase agreement, no later than ten days after the conclusion of the Auction, (or, if no Auction is held, the Bid Deadline (as defined below)), or if a later date is required, the reasons that such a later date is required; and (2) that the Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "***Back-Up Bid***")) until the consummation of the Sale Transaction;

e.    **No Qualified Bidder Bid Protections**: Each Bid, other than a Bid that has been designated as a Stalking Horse Bid (as defined herein), must include a statement that the Bid does not entitle such bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets;

f.    **Employee Obligations**: Each Bid must indicate whether the Acceptable Bidder intends to hire all employees of the Debtor (or if applicable, all employees that are primarily employed in connection with the applicable Assets included in such Bid). If the Acceptable Bidder does not intend to hire all employees, the Acceptable Bidder must include a description of the Acceptable Bidder's intentions with respect to any employee that is not to be hired under the terms of the Bid;

g.    **Sources of Financing**: To the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtors' satisfaction, in consultation with the Consultation Parties, that demonstrates that the Acceptable Bidder has received sufficient debt and equity funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Sale Transaction and other obligations under its Bid, including providing adequate assurance of future performance under all Contracts proposed to be assumed by such Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors;

h.    **Contingencies; No Financing or Diligence Outs**: The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) and all diligence must be completed before the Bid Deadline;

i.    **Identity**:  Each Bid must fully disclose the identity and domicile of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties.  Each Bid must also include contact information for the specific person(s) whom Moelis and A&O Shearman should contact regarding such Bid;

j.    **As-Is, Where-Is**: Each Bid must include a written acknowledgement and representation that the Acceptable Bidder:  (a) has had an opportunity to conduct any and all due diligence prior to making its offer; (b) has relied solely upon its own independent review, investigation, and inspection of any documents and the assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement;

k.    **Authorization**: Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

l.    **Joint Bids**:  The Debtors will be authorized to approve joint Bids in their reasonable business judgment, in consultation with the Consultation Parties, on a case-by-case basis, provided that a joint bid meets the Qualified Bid Requirements and the applicable bidders otherwise comply with these Bidding Procedures;

m.    **Adequate Assurance of Future Performance**:  Each Bid must (a) identify any executory contracts (the "***Executory Contracts***") and any unexpired leases (the "***Unexpired Leases***") to be assumed or assumed and assigned in connection with the proposed Sale Transaction, (b) provide for the payment of all cure amounts (the "***Cure Amounts***") related to such Executory Contracts and Unexpired Leases by the Acceptable Bidder, (c) demonstrate, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties (as defined herein), that the Acceptable Bidder can provide adequate assurance of future performance under all such Executory Contracts and Unexpired Leases sufficient to satisfy the requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code, and (d) provide the following documentation:  (1)  the legal name of the proposed assignee of Unexpired Leases (the "***Proposed Assignee***") and any guarantors, as applicable; and (2) financial statements for the calendar years ended 2022 and 2023 for the Proposed Assignee and any guarantors, as applicable, and other financial information about the Proposed Assignee to demonstrate its ability to provide adequate assurance of future performance;

n.    **Acknowledgement of Compliance with Bidding Procedures, Bidding Order, Bankruptcy Code, and Non-Bankruptcy Law**:  Each Bid must acknowledge its compliance in all respects with these Bidding Procedures,

the Bidding Procedures Order, Bankruptcy Code and any applicable non-bankruptcy law;

o.   **No Collusion**:  The Acceptable Bidder must acknowledge in writing (a) that it has not engaged in any collusion with respect to any Bids or the Sale Transaction, specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the Sale Transaction. For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (email shall suffice) following the Debtors' consultation with the Consultation Parties;

p.   **Good Faith Offer**:  The Bid must constitute a good faith, *bona fide* offer to consummate the Sale Transaction;

q.   **Irrevocable**:  Each Bid must state that in the event such Bid is chosen as the Back-Up Bid (as defined below), it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction;

r.   **Back-Up Bid**:  Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder (as defined below) if Bid is the next highest or otherwise best bid;

s.   **Regulatory Approvals and Covenants**:  A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the Sale Transaction, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval would not be expected in time to allow a the closing of the Sale Transaction to occur by October 8, 2024, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible);

t.   **Time Frame for Closing**:  A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame for the Closing set forth above, or on such timeframe as may be acceptable to the Debtors, in consultation with the Consultation Parties; *provided*, that if the Acceptable Bidder expects to be unable to close on its Bid on or before October 7, 2024, its Bid should indicate the date on which it expects to be able to close;

u.   **No Fees**:  Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid, the Acceptable Bidder is agreeing to disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or other similar form of compensation; and that, for the avoidance of doubt, each Acceptable Bidder by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their reasonable business judgment, in consultation with the Consultation Parties,

12

to provide the Stalking Horse Bid Protections (as defined below) to one or more stalking horse bidders (each, a "***Stalking Horse Bidder***") in accordance with these Bidding Procedures;

v.    **Adherence to Bidding Procedures**:  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction;

w.    **Consent to Jurisdiction**:  The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale, the Sale Transaction and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable; and

x.    **Conditions to Closing**:  Each Bid must identify with particularity each and every condition to closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required.

v.    Auction:  Other than as expressly set forth herein, if the Debtors receive more than one Qualified Bid for the Assets (or, if applicable, any portion of Assets) by the Bid Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder in their reasonable business judgment, in consultation with the Consultation Parties, with respect to such Assets or portion of Assets. If the Debtors do not receive a Qualified Bid for any particular Asset by the Bid Deadline, the Debtors will not conduct the Auction with respect to such Asset.  If one or more Qualified Bids (other than the Stalking Horse Bid, if any) are received by the Bid Deadline with respect to the applicable Assets, then the Debtors shall conduct the Auction with respect to such Assets in accordance with the Auction Procedures (as defined below) and shall consult with the Consultation Parties throughout the Auction process (to the extent such Consultation Parties have not submitted a Qualified Bid).

The Auction shall commence on **September 10, 2024 at 12:00 p.m. (prevailing Eastern Time)**, at the New York offices of Allen Overy Shearman Sterling US LLP, 599 Lexington Avenue, New York, NY  10022, or such later time or other place as the Debtors determine in consultation with the Consultation Parties.

vi.    Stalking Horse Bid Protections:  At any time until 20 days prior to the Bid Deadline, the Debtors shall be authorized, but not obligated, in an exercise of their reasonable business judgment, (a) in consultation with the Consultation Parties and (b) with the consent of the DIP Lenders, to (1) select one or more Acceptable Bidders to act as the Stalking Horse Bidder in connection with the Auction for such assets, and (2) in connection with any stalking horse agreement with a Stalking Horse Bidder and subject in all respects to approval of the Court, (x) provide a break-up fee and (y) agree to reimburse the reasonable and documented out of pocket fees and expenses (the "***Stalking Horse Bid Protections***") in an aggregate amount of break-up fee and reimbursement of expenses not to exceed three percent of the Purchase Price; *provided*, *however*, that if a  DIP Lender, or any affiliate of a DIP Lender, has expressly indicated to the Debtors that it is considering submitting, or has actually submitted, a Bid for any Assets, it shall not have consent rights with respect

to the selection of the Stalking Horse Bidder or any protections to be afforded to such Stalking Horse Bidder.

**A.    Key Dates and Deadlines for the Sale and Auction**

22.    The Debtors are seeking approval of the Bidding Procedures and the following proposed timeline for the sale process (the dates set forth below, respectively, the "***Sale Schedule***") to establish a clear and open process for the solicitation, receipt, and evaluation of third-party bids on a timeline that allows the Debtors to consummate a Sale Transaction.  Moreover, the Debtors, in their sound business judgment, reserve the right to alter the timing of the Sale Schedule as necessary under the circumstances, or to conduct multiple Sale Transactions across one or more Auctions in order to maximize the value of the estates, in each case in accordance with the Bidding Procedures.

23.    The Debtors' need to consummate a sale of their Assets as quickly and efficiently as possible.  The Sale Schedule set forth in the Bidding Procedures and below was calculated to balance the need to provide Potential Bidders with adequate opportunity to conduct the necessary diligence and the need to run an expeditious and efficient Sale Process in accordance with the DIP Milestones.  Sale Declaration ¶¶ 12-14.  Accordingly, the Debtors propose the following key dates for the sale process:

| Date | Deadline |
|---|---|
| **Monday, July 29, 2024, or as soon as reasonably practicable after entry of the Bidding Procedures Order** | Service of Sale Notice; Publication of Sale Notice |
| **Tuesday, July 30, 2024, or as soon as reasonably practicable thereafter** | Serve notice of potential assumption and assignment (the "***Assumption and Assignment Notice***") to contract counterparties |
| **Tuesday, August 20, 2024 (or 21 days after service of an applicable notice of assumption and assignment)** | Deadline to object to proposed cure amounts and assumption and assignment (the "***Assumption and Cure Objection Deadline***") |
| **Friday, September 6, 2024, at 5:00 p.m. (prevailing Pacific Time)** | Bid Deadline |

| | |
|---|---|
| **Monday, September 9, 2024, at 9:00 a.m. (prevailing Pacific Time)** | Qualified Bid Designation Date |
| **Tuesday, September 10, 2024, at 12:00 p.m. (prevailing Eastern Time)** | Auction (if necessary) to be held at the New York offices of A&O Shearman, or such other location announced to the bidders and Consultation Parties |
| **Thursday September 12, 2024** | Serve Notice of Successful Bidder on Contract Counterparties |
| **Friday, September 19, 2024, at 12:00 p.m. (prevailing Pacific Time)** | Deadline to object to the proposed Sale ("***Sale Objection Deadline***"); deadline to object to adequate assurance ("***Adequate Assurance Objection Deadline***"). |
| **Tuesday, September 24, 2024, at 12:00 p.m. (prevailing Pacific Time)** | Deadline for responses to objections. |
| **Wednesday, September 25, 2024, at 10:00 a.m. (prevailing Pacific Time)[6]** | Sale Hearing |
| **Thursday, September 26, 2024** | Entry of Sale Order |
| **On or before Monday, October 8, 2024** | Closing |

24.     The Debtors respectfully request that the Court approve this timeline, which the Debtors believe appropriate under the circumstances.  The timeline contemplated by the Bidding Procedures, while expeditious, is consistent with the milestones in the DIP Milestones and otherwise is reasonable under the circumstances.  Sale Declaration ¶ 12-14.  It is vitally important that the Debtors be afforded the opportunity to proceed with an efficient sale process within the DIP Milestones to preserve value for all stakeholders.  Sale Declaration ¶ 8.

25.     As described above, there already has been a thorough and extensive marketing process for the Debtors.  Many of the potential buyers most likely to make Qualified Bids on the Assets have already engaged with the Debtors, completed extensive diligence, had the opportunity

---

[6]     Subject to the availability and convenience of the Court.

to make proposals prepetition, and are aware of the Debtors' situation.   In addition, potential bidders who have not previously conducted diligence on the Debtors' businesses will have immediate access to, subject to the execution of an appropriate Confidentiality Agreement, a significant amount of information regarding the Assets, including, but not limited to, a confidential information memorandum (the "***CIM***").  Sale Declaration ¶ 7.

### B.    Form and Manner of Sale Notice

26.    The Auction, if needed, will be held on **September 10, 2024 at 12:00 p.m. (prevailing Eastern Time)** at the New York offices of Allen Overy Shearman Sterling US LLP, 599 Lexington Avenue, New York, NY  10022, or such later time or other place as the Debtors determine in consultation with the Consultation Parties.

27.    By **July 29, 2024**, or as soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors will cause the notice of the Sale, Bidding Procedures, Auction, and Sale Hearing (the "***Sale Notice***"), substantially in the form attached as **<u>Exhibit B</u>** to the Bidding Procedures Order, to be served on the parties that receive notice of this Motion.  In addition, by **July 29, 2024**, or as soon as practicable after entry of the Bidding Procedures Order, the Debtors will post the Sale Notice and Bidding Procedures on their case website, **https://dm.epiq11.com/case/nevadacopper**, and publish the Sale Notice, with any modifications necessary for ease of publication, on one occasion in *The Wall Street Journal (National Edition)*, to provide notice to any other potential interested parties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

28.    The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including the date, time, and place of the Auction (if any), the Bidding Procedures, and the dates and deadlines related thereto.  Accordingly, the Debtors request that the Court find that the noticing procedures are adequate and appropriate under the circumstances and comply with the requirements of Bankruptcy Rule 2002 and that the form and manner of the Sale Notice be approved and no other or further notice of the Sale, Bidding Procedures, Auction, and Sale Hearing be required.

### C. *Assumption and Assignment Procedures*

29.    In addition to the Sale Notice, the Debtors also seek approval of the Assumption and Assignment Notice to facilitate the fair and orderly assumption, assumption and assignment, or rejection of certain of the Executory Contracts and Unexpired Leases as may be designated in any Successful Bid.  The proposed procedures (the "***Assumption and Assignment Procedures***") for assumption and assignment of the Executory Contracts and Unexpired Leases are set forth in the Assumption and Assignment Notice attached as **Exhibit C** to **Exhibit 1**.  For convenience, certain key terms of the Assumption and Assignment Procedures are summarized below:[7]

   i.    Assumption and Assignment Notice:  By **July 30, 2024**, or as soon as reasonably practicable thereafter, the Debtors shall serve a notice of contract assumption (the "***Assumption and Assignment Notice***"), in substantially the form attached to the Bidding Procedures Order as Exhibit C via first class mail on the Contract Counterparties and provide a copy of the same to the Consultation Parties.  The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (a) the title of the executory contract or lease, (b) the name of the counterparty to the executory contract or lease, (c) Debtors' good faith estimates of the Cure Amounts, if any, required in connection with the executory contract or lease, and (d) the Assumption and Cure Objection Deadline; *provided, however*, that **service of a Contract Assumption Notice does not constitute an admission that any Contract listed thereon is an executory contract or that such stated Cure Amount constitutes a claim against the Debtors or a right against any Successful Bidder, all rights with respect thereto being expressly reserved. The inclusion of a contract on the Assumption and Assignment Notice is not a guarantee that such contract will ultimately be assumed and assigned**.

   ii.    Cure Amounts:  The payment of the applicable Cure Amounts by the Debtors or the Successful Bidder, as applicable, shall (a) effect a cure of all defaults existing thereunder, (b) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (c) together with the assumption of the ultimately assumed Executory Contracts by the Debtors and the assignment of such Executory Contracts to the Successful Bidder, constitute adequate assurance of future performance thereof.

   iii.    Supplemental Contract Assumption Notice.  If the Debtors, at any time after the Assumption and Assignment Service Deadline (a) identify additional Executory Contracts or Unexpired Leases that may be assumed by and assigned to the Successful Bidder, (b) remove any Executory Contracts or Unexpired Leases from

---

[7]    This summary description and any further descriptions in this Motion of the provisions of the Assumption and Assignment Procedures are for summary purposes only, do not restate the terms of the Assumption and Assignment Procedures in their entirety, and in the event of any inconsistency with the Assumption and Assignment Procedures, the Assumption and Assignment Procedures in the Assumption and Assignment Notice will govern.  Capitalized terms used but not defined in this section shall have the meanings ascribed to them in the Assumption and Assignment Procedures.

the list attached to the Assumption and Assignment Notice, or (c) modify the previously stated Cure Amount associated with any Executory Contract or Unexpired Lease; then the Debtors will promptly file with this Court and serve by first-class mail a supplemental notice of contract assumption (a "***Supplemental Assumption and Assignment Notice***") on each of the Contract Counterparties affected by the Supplemental Assumption and Assignment Notice.  Each Supplemental Assumption Notice will include the same information with respect to listed Executory Contracts as was included in the Assumption and Assignment Notice.  A Successful Bidder may designate additional Executory Contracts to be assumed and assigned up to seven business days prior to closing and may remove Executory Contracts or Unexpired Leases from the list of Executory Contracts and Unexpired Leases up to two business days prior to closing.

iv.    <u>Objections</u>:  Objections, if any, to the proposed assumption and assignment or the Cure Amount proposed with respect thereto, must (a) be in writing, (b) comply with the applicable provisions of the Bankruptcy Rules, and the Local Rules, (c) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amount, state the correct Cure Amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (d) be filed with the Court and served upon (1) proposed counsel to the Debtors, (2) counsel to the Stalking Horse Bidder, if any, (3) the Bid Notice Parties (as defined in the Bidding Procedures), and (4) any other party that has filed a notice of appearance in these Chapter 11 Cases, so as actually to be received on or before the Sale Objection Deadline or deadline set forth in the Supplemental Assumption and Assignment Notice, as applicable.

v.    <u>Dispute Resolution</u>:  In the event that the Debtors and a Contract Counterparty cannot resolve an objection to a Cure Amount, the Executory Contract or Unexpired Lease at issue may be assumed by the Debtors and assigned to the Successful Bidder, provided that the Debtors shall segregate the Cure Amount that the Contract Counterparty asserts is required to be paid, pending a resolution of the dispute by the Court or mutual agreement by the parties.  Any objection to the proposed assumption and assignment of a contract or related Cure Amount proposed in connection with the Sale that remained unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at a later date as fixed by the Court).

vi.    <u>Contract Assumption</u>:  No Executory Contract or Unexpired Lease shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Executory Contract or Unexpired Lease or (ii) the date the Sale has closed.

### D.    *Provisions Under Local Rule 6004*

30.    Set forth below is the manner in which the Debtors expect to address the following documents and provisions identified in Local Rule 6004:

i.    <u>Proposed Asset Purchase Agreement</u>:  The Form APA will be filed on the docket of the Chapter 11 Cases, included in the Data Room, and provided to Potential Bidders.

ii.    <u>Lienholders List</u>:  The Debtors will file a list of all lienholders with an interest in the property to be sold under the Sale Order prior to the Sale Hearing.

iii.    <u>Sale Order</u>:  The Debtors will file a proposed form of Sale Order prior to the Sale Hearing.

iv.    <u>Consumer Privacy</u>:  The Debtors have not made any request for the appointment of a consumer privacy ombudsman under 11 U.S.C. § 332, as the potential losses or gains of privacy to consumers if the Sale is approved by the Court are not expected to be in any way substantial.

v.    <u>Material Terms</u>:  The Debtors will highlight the relevant material terms specified in Local Rule 6004(b)(6) as they relate to the Successful Bid in a separate filing prior to the Sale Hearing.

**Basis for Relief**

**II.    Approval of the Bidding Procedures Is in the Best Interests of the Debtors' Estates and Should be Approved.**

31.    The Bidding Procedures are appropriate under sections 363 and 105 of the Bankruptcy Code and should be approved.  Section 363(b) of the Bankruptcy Code provides that a debtor in possession, "after notice and a hearing," may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Section 105(a) provides in pertinent part that "[t]he Court may issue any order, process or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

32.    The Debtors submit that the Bidding Procedures are a valid exercise of their business judgment, fair and appropriate under the circumstances, consistent with procedures routinely approved by bankruptcy courts, and are in the best interest of their estates.   The Bidding Procedures provide for an orderly, uniform, and competitive bidding process through which interested parties may submit offers to purchase the Assets.

33.    The Debtors, with the assistance of their advisors, have structured the Bidding Procedures to promote active bidding by interested parties and to reach the highest or otherwise best offer reasonably available for the Debtors' businesses.  Sale Declaration ¶ 10.  Potential Bidders will have sufficient notice and an opportunity to conduct diligence and finalize their bids, particularly in light of the fact that it is expected that many potential bidders already engaged with the Prepetition Investment Banker, Moelis, and the Debtors' management in the months leading up to the Petition Date.

34.     The Bidding Procedures are designed to allow the Debtors an adequate opportunity to consider competing bids and to select the highest or otherwise best offers for the potential completion of a Sale.  The Bidding Procedures provide for the Debtors to conduct the Auction, if necessary, in a fair and transparent manner that will encourage participation by financially capable bidders with demonstrated ability to timely consummate a Sale.  Moreover, the Bidding Procedures give the Debtors the flexibility to designate a "stalking horse bid" to potentially set a higher floor for bids.  In addition, the Order provides that the Debtors may alter the Sale Schedule or run multiple Auctions as necessary, thereby preserving the Debtors' ability to run a tailored, value-maximizing process for any particular group of Assets.

35.     The Bidding Procedures are designed to promote what courts have deemed to be the paramount goal of a chapter 11 sale:  maximizing the value of sale proceeds received by the estate.  *In re Golden Empire Air Rescue, Inc.*, No. BAP EC-07-1086, 2007 WL 7540946, at *7 (B.A.P. 9th Cir. Oct. 25, 2007) ("The main issue with respect to the sale of estate assets is whether the trustees obtained the best possible price in light of their fiduciary duty to maximize the value to the estates.  A sale that is well advertised and subject to overbids is usually the preferred method to achieve the best possible price."); *In re Dura Auto.  Sys., Inc.*, No. 06-11202 (KJC), 2007 WL 7728109, at *90 (Bankr. D.  Del. Aug.  15, 2007) (citing cases and noting that "courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales"); *In re Celsius Network LLC*, No. 22-10964 (MG), 2022 WL 14193879, at *6, 7 (Bankr. S.D.N.Y. Oct. 24, 2022) ("[G]enerally, the Court will entertain a motion for approval . . . of proposed bidding procedures if such procedures are, as a matter of reasonable business judgment, likely to maximize the sale price," and finding bidding procedures there "work[ed] to ensure a fair bidding process and to maximize the sale price of the property in the auction" (second alteration in original)) (quoting the Sale Guidelines and Bankruptcy Code section 363(b)); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *see also*

*Silverman as Tr. of Stanley C. Silverman Revocable Tr. , dated Aug. 26, 2006 v. Birdsell*, 796 F. App'x 935, 937 (9th Cir. 2020) (holding that under § 363, a bankruptcy court must "assure that optimal value is realized by the estate under the circumstances") (quoting *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288–89 (9th Cir. BAP 2005)).  Accordingly, the Bidding Procedures will assist the Debtors in maximizing the value of their estates.

36.     As described above, the sale timeline and postpetition marketing period thereunder is reasonable.  The DIP Milestones were heavily negotiated at arm's length, and separately provided for the Debtors' financing under their DIP Facility, and failure to adhere to such timeline could jeopardize the process that has been agreed to and funded by the Debtors' DIP Lenders.  It is noteworthy, that courts in this district and other districts have approved procedures containing similar timelines (if not shorter) than the sale timeline proposed herein.  *See, e.g.*, *In re Cash Cloud Inc. dba Coin Cloud*, No. 23-10423 (MKN) (Bankr. D. Nev. Apr. 27, 2023), ECF No. 483 (approving 63-day sale timeline); *In re Red Rose, Inc.*, Case No. 20-12814 (MKN) (Bankr. D. Nev. Nov. 6, 2020), ECF No. 1281 (approving 46-day sale timeline); *In re Las Vegas Monorail Company*, Case No. 20-14451 (NMC) (Bankr. D. Nev. Sept. 30, 2020), ECF No. 98 (approving 41-day sale timeline); *In re Metal Partners Rebar, LLC, et al.*, Case No. 20-12878 (ABL) (Bankr. D. Nev. Aug 11, 2020) (approving 50-day sale timeline).

37.     The Debtors respectfully submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings in bankruptcy proceedings, and are consistent with the legal standards in the Ninth Circuit.  Accordingly, the Bidding Procedures should be approved, because, under the circumstances, they are reasonable, appropriate, and in the best interests of the Debtors, their estates, and all parties in interest.

**III.    The Bid Protections Have a Sound Business Purpose and Should Be Approved.**

38.     In the event that the Debtors seek to appoint a Stalking Horse Bidder, the Debtors seek authority to offer customary bid protections, consisting of a Break-Up Fee and Expense

Reimbursement, in an aggregate amount not to exceed three percent of the applicable purchase price. The use of a stalking horse in a public auction process for the sale of a debtor's assets is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value." *Off. Comm. of Unsecured Creditors v. Interforum Holding LLC*, No. 11-CV-219, 2011 WL 2671254, No. 11- 219, *1 (E.D. Wis. July 7, 2011).

39.    Generally, bidding protections, such as break-up fees, are a normal and, in many cases, necessary component of significant sales under the Bankruptcy Code. *See In re Integrated Res., Inc.*, 147 B.R. 650, 659–60 (S.D.N.Y. 1992) ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets. . . . In fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize value."). As a result, courts routinely approve such bidding protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See In re Energy Future Holdings Corp.*, 904 F.3d 298 (3d Cir. 2018) (holding that "[T]he allowability of break-up fees . . . depends upon the requesting party's ability to show that the fees [a]re actually necessary to preserve the value of the estate") (internal quotations omitted) (alterations in original); *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010); *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999). The Debtors believe that the allowance of the Stalking Horse Bid Protections are in the best interests of the Debtors' estates and their creditors, as a Stalking Horse Bidder, if designated, will establish a floor for further bidding that may increase the consideration given in exchange for the Assets for the benefit of the Debtors' estates.

40.    A proposed bidding incentive, such as a break-up fee, should be approved when it is in the best interests of the estate. *See In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995); *see also In re America West Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (stating that the standard is whether the transaction will "further the diverse interests of the debtor, creditors

1    and equity holders, alike") (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir.1983)); *In re*

2    *Hupp Indus., Inc.*, 140 B.R. 191 (Bankr. N.D. Ohio 1992).  Typically, this requires that the bidding

3    incentive provide some benefit to the debtor's estate.  *Calpine Corp. v. O'Brien Envtl. Energy,*

4    *Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999) (holding even though

5    bidding incentives are measured against a business judgment standard in non-bankruptcy

6    transactions, the administrative expense provisions of section 503(b) govern in the bankruptcy

7    context).

8        41.    The Debtors propose to pay the Stalking Horse Bid Protections only in the event

9    they determine, after good faith, arm's-length negotiations, that designating a Stalking Horse

10   Bidder would be necessary and beneficial for their estates.  Accordingly, for the reasons set forth

11   above, the Debtors respectfully submit that the Court grant the Debtors the authority to incur and

12   pay the Stalking Horse Bid Protections to the extent the Stalking Horse Bid Protections are

13   necessary to preserve the value of the Debtors' estates.

14   **IV.    The Form and Manner of Notice Should Be Approved.**

15       42.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors

16   with 21 days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must

17   include the time and place of the Auction and the deadline for filing any objections to such a sale.

18       43.    As soon as reasonably practicable following entry of the Order, the Debtors will

19   cause the Sale Notice to be served upon the Sale Notice Parties (as defined in the Bidding

20   Procedures).  In addition, no later than July 29, 2024, or as soon as reasonably practicable after

21   entry of the Bidding Procedures Order, the Debtors shall publish the Sale Notice, with any

22   modifications necessary for ease of publication, on one occasion in *The Wall Street Journal*

23   *(National Edition)*, to provide notice to any other potential interested parties, and post the Sale

24   Notice on their case website, https://dm.epiq11.com/case/nevadacopper.

25       44.    The Debtors submit that the Sale Notice constitutes good and adequate notice of

26   the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the

27

28

applicable requirements of Bankruptcy Rule 2002.  Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the notice of the Sale Notice.

**V.    Assumption and Assignment Procedures Are Appropriate and Should Be Approved.**

45.    As set forth above, the Sale contemplates the assumption and assignment of Executory Contracts and Unexpired Leases to the Successful Bidder.  In connection with this process, the Debtors believe it is necessary to establish assumption and assignment procedures by which:  (i) the Debtors and Contract Counterparties can reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code; and (ii) such counterparties can object to the assumption and assignment of the Contracts and/or related cure payments (the "***Assumption and Assignment Procedures***").  As set forth in the Bidding Procedures Order, the Debtors also request that any party that fails to object to the proposed assumption and assignment of any Contract be deemed to consent to the assumption and assignment of the applicable contract pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Sale Order, along with the cure payments identified in the Contract Assumption Notice.  *See, e.g., In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (noting by not objecting to sale motion, creditor deemed to consent); *In re Shary*, 152 B.R. 724, 725–26 (Bankr. N.D. Ohio 1993) (stating that "creditor who receives notice, but fails to oppose the proposed sale, is deemed to have consented"); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

46.    The Debtors believe that the Assumption and Assignment Procedures are fair and reasonable, provide sufficient notice to parties to the executory contracts and leases, and provide certainty to all parties in interest regarding their obligations and rights in respect thereof.  Accordingly, the Debtors request the Court approve the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

24

**VI.    The Sale Transaction Should be Approved as an Exercise of Sound Business Judgment.**

47.    Ample authority exists for approval of the Sale.  Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  It is well settled that the bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification.  *In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988); *see also In re Claar Cellars LLC*, No. 20-00044-WLH11, 2020 WL 1238924, at *3 (Bankr. E.D. Wash. Mar. 13, 2020).(noting that section 363(b)(1) "codifies principles of long lineage in United States bankruptcy law — if an estate is to be maximized, then its representative must enjoy a flexible and broad mandate to use or sell the estate's assets to realize or create value").  Moreover, pursuant to section 105(a) of the Bankruptcy Code a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

48.    Courts in the Ninth Circuit and others have required that the sale of a debtor's assets be based upon the sound business judgment of the debtor.  *See In re Lahijani*, 325 B.R. at 289 (stating that "[o]rdinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection"); *In re Walter*, 83 B.R. at 17 (holding that a bankruptcy court "has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification"); *In re Catalina Sea Ranch, LLC*, No. 2:19-BK-24467-NB, 2020 WL 1900308, at *6 (Bankr. C.D. Cal. Apr. 13, 2020) (holding that "there must be some articulated business justification, other than the appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business") (quoting *In re Lionel Corp.*, 722 F.2d at 1070).

49.    Once a court is satisfied that there is a sound business justification for the proposed sale, the court then has the ability to determine whether (i) the sale is in the best interest of the estate; (ii) notice to creditors was proper; (iii) the marketing was adequate; and (iv) the sale is

negotiated and proposed in good faith and is made at arm's-length. *See In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *accord In re Lionel Corp.*, 722 F.2d at 1069; *In re Slates*, No. BAP EC-12-1168-KIDJU, 2012 WL 5359489, at *11 (B.A.P. 9th Cir. Oct. 31, 2012); *In re Bardos*, No. 6:10-BK-41455-SY, 2016 WL 1161225, at *8 (B.A.P. 9th Cir. Mar. 23, 2016) (noting that "[i]n the Ninth Circuit, a § 363(b)(1) sale does not require a good faith finding.'") (citing to *In re Thomas*, 287 B.R. 782, 785 (B.A.P. 9th Cir. 2002)); *In re DeBilio*, No. BAP CC-13-1441, 2014 WL 4476585, at *6 (B.A.P. 9th Cir. Sept. 11, 2014) (same). Additionally, where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

### A. *The Debtors Have Demonstrated a Sound Business Justification for the Proposed Sale.*

50. A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1063; *see also In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (recognizing that paramount goal of any proposed sale of property of estate is to maximize value); *In re Golden Empire Air Rescue, Inc.*, 2007 WL at *7 (holding that the main issue with respect to the approval of the sale of estate assets is whether the trustees obtained the best possible price in light of their fiduciary duty to maximize the value to the estates").

51. Here, a sound business purpose exists for the Sale because the Debtors believe that the Sale Transaction will maximize the value of their Assets, exposing them to the market as part of a competitive, arm's length process. The Debtors further submit that the Successful Bid will constitute the highest or otherwise best offer for the Assets and will provide a greater recovery for

the Debtors' estates than would be provided by any other available alternative. As such, the Debtors' determination to sell the Assets through an Auction process and subsequently to enter into a purchase agreement with the Successful Bidder will be a valid and sound exercise of the Debtors' business judgment. The Debtors will submit evidence at the Sale Hearing to support these conclusions.

52. Also, because any sale of the Debtors' Assets likely will contemplate the assumption of certain of the Debtors' Executory Contracts and Unexpired Leases, it will result in payment in full for some of the Debtors' creditors. However, as described, the justifications for pursuing the Sale go beyond the appeasement of major creditors, and instead focus on maximizing the value of the Debtors' estates for the benefit of all stakeholders. *In re Catalina Sea Ranch, LLC*, 2020 WL at *6.

53. Pursuing a sale and marketing process represents a reasonable exercise of the Debtors' business judgment and is in the best interests of all parties. An orderly but expeditious sale of the Assets is critical to preserving and realizing their going concern value and, in turn, to maximizing recoveries for the Debtors' economic stakeholders and preserving jobs. A prompt sale is also required by the DIP Milestones. Accordingly, based upon the foregoing, the Debtors request that the Court make a finding that the proposed sale of the Assets is a proper exercise of the Debtors' business judgment and is rightly authorized.

**B.    Adequate and Reasonable Notice of the Auction and Sale Will Be Provided.**

54. The notice to third parties that the Debtors propose to provide, as set forth in the Bidding Procedures Order and Bidding Procedures, is more than adequate and reasonable. The Sale Notice: (i) will be served in a manner that provides parties in interest notice of the date, time, and location of the Sale Hearing; (ii) informs parties in interest of the deadlines for objecting to the Sale or the assumption and assignment of the Executory Contracts; and (iii) otherwise includes all information relevant to parties interested in or affected by the Sale. Significantly, the form and manner of the Sale Notice will have been approved by this Court pursuant to the Bidding Procedures Order after notice and a hearing before it is served on parties in interest.

55.     Such notice will ensure that actual notice of the Auction, Sale Hearing, and Sale will be provided to all known creditors of the Debtors, in addition to notice by publication. Bankruptcy Rules 2002(a) and (c) require the Debtor to notify creditors of the Sale, the terms and conditions of the Sale, the time and place of the Auction, and the deadline for filing any objections. The Debtor believes that the proposed notice procedures fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Sale, Bidding Procedures, Auction, and Sale Hearing to the Debtor's creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a bona fide interest in acquiring the Assets.  Such notice, together with the authority pursuant to sections 363 and 365 of the Bankruptcy Code, will enable the Court to make findings at the Sale Hearing and in the Sale Order that the ultimate purchaser of the Assets shall not be liable under theories of successor liability in connection with such Acquired Assets.

### C.     The Proposed Sale Process Will Produce a Fair and Reasonable Purchase Price for the Assets.

56.     The Bidding Procedures and the Debtors' marketing process is designed to promote active bidding by interested parties and to reach the highest or otherwise best offer reasonably available for the Debtors' businesses.  Sale Declaration ¶¶ 10, 14.  As a result, the Debtors are confident that the sale process will culminate in the Debtors obtaining the highest or otherwise best value for the applicable Assets which will inure to the benefit of all parties in interest in these Chapter 11 Cases.

57.     It is well-settled that, where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market.  *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction"); *In re Lahijani*, 325 B.R. at 289 (noting that

"[t]he price achieved by an auction is ordinarily assumed to approximate market value when there is competition by an appropriate number of bidders").  Consequently, the ultimately successful bid, after being subject to a "market check" in the form of a well-run marketing process and auction, will constitute, in the Debtors' reasonable business judgment, the highest or otherwise best offer for the Assets and will provide a greater recovery for their estates than any known or practicably available alternative.  *See, e.g., In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure[, t]he auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction"); *In re Golden Empire Air Rescue, Inc.*, 2007 WL at *7 (holding that "[a] sale that is well advertised and subject to overbids is usually the preferred method to achieve the best possible price").

58.    As noted above, prior to the Bid Deadline, Moelis will continue to market the Assets and solicit other offers consistent with the Bidding Procedures, including, for example, by contacting previously solicited parties, continuing to provide acceptable bidders with Data Room access and requested information, considering a variety of alternative transaction structures, and otherwise assisting the Debtors with all efforts to increase transaction value. In this way, the number of bidders that are eligible to participate in a competitive Auction process will be maximized, or, if no Auction is held because no Auction is necessary the purchase price will, conclusively, be deemed fair value.

**D.    The Sale Has Been Proposed In Good Faith Without Collusion and the Successful Bidder Is a "Good-Faith Successful Bidder"**

59.    The Debtors request that the Court find the Successful Bidder is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of Assets.  Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the

appeal, unless such authorization and such sale or lease were stayed
pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets

sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in

the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser

leased or purchased the assets in "good faith."

60.    Although the Bankruptcy Code does not define "good faith," courts have held that

a purchaser shows its good faith through the integrity of its conduct during the course of the sale

proceedings, finding that where there is a lack of such integrity, a good-faith finding may not be

made. *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)

(quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) ("Typically, the

misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud,

collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take

grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Services, Inc.*, 798 F.2d

1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

The Debtors submit that the Successful Bidder(s), will be "good faith purchasers" within the

meaning of section 363(m) of the Bankruptcy Code, and the Stalking Horse purchase agreement,

if any, or the Form APA, or any marked versions thereof, would be a good-faith, arm's-length

agreement entitled to the protections of section 363(m) of the Bankruptcy Code.[8]  *First*, as set forth

in more detail above, the consideration to be received by the Debtors from a Successful Bidder

will be substantial, fair, and reasonable.  *Second*, any sale agreement with a Successful Bidder will

arise from the culmination of a competitive process in which all parties will be represented by

counsel and all negotiations will be conducted on an arm's-length, good-faith basis.  *Third*, the

---

[8]    The Debtors believe that a finding of good faith within the meaning of section 363(m) of the Bankruptcy Code
will be appropriate for any Successful Bidder.  Pursuant to the Bidding Procedures, any Successful Bidder will
have had to present a proposal in accordance with the Bidding Procedures.  In addition, the Debtors will not
choose as the Successful Bidder or Backup Bidder (as defined in the Bidding Procedures) any entity whose good
faith under section 363(m) of the Bankruptcy Code can reasonably be doubted and will be prepared to present the
Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) of the
Bankruptcy Code has been satisfied.

Bidding Procedures are designed to ensure that no party is able to exert undue influence over the process, and it is expect that there will not be any indication of any "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct that would cause or permit the Sale to be avoided under section 363(n) of the Bankruptcy Code. *Finally*, any bids that the Debtors ultimately determine to be Successful Bids will have been evaluated and approved by the Debtors in consultation with their advisors and the Consultation Parties. Accordingly, the Debtors believe that the Successful Bidder, if any, and any purchase agreement associated with a Successful Bid should be entitled to the full protections of section 363(m) of the Bankruptcy Code.

### E.    *A Sale Free and Clear of All Liens, Claims, Interests, or Other Encumbrances, to the Fullest Extent Permitted by the Bankruptcy Code, Is Appropriate.*

61.    In the interest of attracting the best offers, the Assets should be sold free and clear of any and all liens, claims, interests, and other encumbrances, to the fullest extent permitted by the Bankruptcy Code, in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances to attach to the proceeds of the applicable Sale. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (i) applicable nonbankruptcy law permits such a free and clear sale; (ii) the holder of the interest consents; (iii) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same). The purpose of section 363(f) is to allow debtors to maximize the value of the estates in a sale. *In re Realia, Inc.*, 2012 Bankr. LEXIS 1083, at *31-31, 2012 WL 833372 (9th Cir. BAP) ("the purpose of the 'free and clear' language [in section 363(f)] is to allow

the debtor to obtain a maximum recovery on its assets in the marketplace"), *aff'd*, 2014 U.S. App. LEXIS 7138, 2014 WL 1466227 (9th Cir.).

62.     The Debtors submit that any interest in the Assets that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto.   The Debtors accordingly request authority to convey the Assets to the Successful Bidder, if any, free and clear of all encumbrances, with any such encumbrances to attach to the proceeds of the Sale Transaction.

**VII.    Assumption and Assignment of Assigned Contracts Should Be Approved.**

> **A.     *The Assumption and Assignment Procedures Reflect the Debtors' Reasonable Business Judgment.***

63.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The Debtors' decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.  *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523 (1943) (applying Bankr. Act section 77(b), predecessor to section 365 of the Bankruptcy Code, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (holding that "a bankruptcy court applies the business judgment rule to evaluate a [debtor-in-possession]'s rejection decision"); *In re X10 Wireless Tech., Inc.*, No. BAP WW-04-1328-PST, 2005 WL 6960205, at *3 (B.A.P. 9th Cir. Apr. 5, 2005) (holding that "[w]hether to assume or reject an executory contract is left to the business judgment of the trustee or debtor in possession"); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989) (describing

deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume executory contracts under the Code").

64.    Upon finding that a debtor has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code if the transaction is in the best interests of the estate. *See In re Station Casinos, Inc.*, No. 09-52477-GWZ, 2009 WL 8519660, at *4 (Bankr. D. Nev. July 28, 2009) (holding that "[i]n connection with decisions related to the use of leases to maximize the value of the estate, courts show deference to a debtor's sound business decisions"); *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008) (stating that "the debtor's interests are paramount in the balance of control is underscored by the business judgment standard employed by courts in determining whether to permit the debtor to assume or reject the contract").

65.    The assumption of the Assigned Contracts in connection with a Sale is an exercise of the Debtors' sound business judgment.  It is unlikely that any purchaser would want to acquire the Assets unless Executory Contracts and Unexpired Leases that are needed to manage the Debtors' day-to-day operations were to be included in the transaction.  Moreover, the Assigned Contracts will have been selected by the successful bidder, and, therefore, by definition will be part of the bid that is selected as the highest or best.  Accordingly, because the Assigned Contracts are necessary to operate the Debtors' businesses and, as such, are essential to obtaining the highest or otherwise best offer for the Debtors' businesses, the Debtors' assumption of the Assigned Contracts is an exercise of sound business judgment and should be approved.

66.    The Debtors submit that, in light of the foregoing, the assumption and assignment of the Assumed Contracts by way of the Assumption and Assignment Procedures should be approved as an exercise of their business judgment.

**B.    *Defaults Will Be Cured in Connection with the Sale Process.***

67.    Upon finding that a debtor has exercised its business judgment in determining that assuming an Executory Contract or Unexpired Lease is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy

Code, specifically that a debtor (i) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract, (ii) compensate parties for pecuniary losses arising therefrom, and (iii) provide adequate assurance of future performance thereunder.

68.     The consummation of a Sale, which will involve the assignment of the Assigned Contracts, will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code.  Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Assigned Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured.  Section 365(b)(1) of the Bankruptcy Code, therefore, "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain." *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

69.     As set forth above, the Debtors propose to file with the Court and serve on each Counterparty, the Assumption and Assignment Notice indicating the Debtors' calculation of the amounts necessary to cure any prepetition monetary defaults for each assumed or assumed and assigned contract.  The Counterparties will have the opportunity to file objections to the proposed assumption and assignment of the Assigned Contracts to the Successful Bidder, including the proposed Cure Amounts.  Accordingly, the Debtors are confident that any such cure of defaults under the Assigned Contracts will be achieved fairly, efficiently, and properly, consistent with the Bankruptcy Code.

### C.     *Adequate Assurance of Future Performance Will Be Provided to Counterparties.*

70.     Similarly, the Debtors submit that the third requirement of section 365(b) of the Bankruptcy Code — adequate assurance of future performance — is also satisfied given the facts and circumstances present here.  Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided."  11 U.S.C. § 365(f)(2)(B).  The meaning of "adequate assurance of future performance" depends on the facts

and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

71.    The Debtors believe that they can and will demonstrate that the requirements for assumption and assignment of the Assumed Contracts to the Successful Bidder will be satisfied. As set forth in the Bidding Procedures, for a bid to qualify as a "Qualified Bid," a Potential Bidder must include with its bid such financial and other information setting forth adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code and the bidder's willingness to perform under any Assigned Contracts (the "Adequate Assurance Information"). The Debtors will provide Adequate Assurance Information to all Counterparties to the Assigned Contracts and Counterparties will have an opportunity to file an objection in advance of the Sale Hearing.  The Court therefore should have a sufficient basis to authorize the Debtors to reject or assume and assign any Executory Contract or Unexpired Lease to be assumed and assigned to any Successful Bidder.  Based on the foregoing, the Debtors' assumption and assignment of the Assigned Contracts satisfy the requirements under section 365 of the Bankruptcy Code and should be approved

**Reservation of Rights**

72.     Nothing contained herein is or should be construed as:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an admission that any particular claim is of a type specified or defined hereunder; (v) a request to assume any executory contract or unexpired lease; or (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law

**Request for Waiver of Bankruptcy Rules 6004(h) and 6006(d)**

73.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of fourteen (14) days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

74.     In light of the current circumstances and financial condition of the Debtors, the Debtors believe that in order to maximize value and preserve jobs, the sale of the Assets pursuant to the Sale process must be consummated as soon as practicable.  Accordingly, the Debtors request that the Bidding Procedures Order and the Sale Order be effective immediately upon entry of each such order and that the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d) be waived.

**Notice**

75.     Notice of this Motion will be provided to: (i) the Office of the United States Trustee for Region 17; (ii) the 20 largest unsecured creditors of each of the Debtors; (iii) the Internal Revenue Service; (iv) the Office of the United States Attorney for the District of Nevada; (v) counsel to the DIP Lenders, (a) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY  10036, Attn:  Brad Kahn; 2001 K St. NW, Washington, D.C.  20006, Attn:  Kate Doorley; and (b) Shea Larsen PC, 1731 Village Center Circle, Suite 150, Las Vegas, NV  89134,

Attn: James Patrick Shea and Bart Larsen; (vi) Milbank LLP, as counsel to KfW IPEX-Bank GmbH as administrative agent under the Debtors' prepetition credit agreement, 55 Hudson Yards, New York, NY 10001, Attn: Tyson Lomazow; (vii) Bennett Jones LLP, as counsel to Mercuria Investments US, Inc., 3400 One First Canadian Place, P.O. Box 130, Toronto, Ontario M5X 1A4, Canada, Attn: Simon Grant; (viii) White & Case LLP, as counsel to Concord Resources Limited as buyer under the Debtors' prepetition advance payment agreement, 1221 6th Avenue, New York, NY 10020, Attn: Philip Abelson; (ix) Davis, Graham & Stubbs LLP, as counsel to Triple Flag Mining Finance Bermuda Ltd. as purchaser under the Debtors' prepetition purchase and sale agreement, 1550 17th Street, Suite 500, Denver, CO 80202, Attn: Kyler Burgi; (x) Cleary Gottlieb Steen & Hamilton LLP, as counsel to Pala Investments Limited as prepetition lender, 2 London Wall Place, London, EC2Y 5AU, United Kingdom, Attn: Solomon J. Noh; One Liberty Plaza, New York, NY 10006, Attn: Lisa M. Schweitzer; (xi) Kelley Drye & Warren, LLP, as counsel to the DIP Agent, 3 World Trade Center, 175 Greenwich Street, New York, NY 10007, Attn: James S. Carr, Esq.; and (xii) any party that is required to receive or has requested notice pursuant to Bankruptcy Rule 2002 or Local Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

1

2

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and proper.

3

Dated this 20th day of June 2024.

McDONALD CARANO LLP

4

5

*/s/ Ryan J. Work*

Ryan J. Works (NSBN 9224)

6

Amanda M. Perach (NSBN 12399)

2300 West Sahara Avenue, Suite 1200

7

Las Vegas, Nevada 89102

8

ALLEN OVERY SHEARMAN STERLING US LLP

Fredric Sosnick (NYSBN 2472488) (*admitted pro hac vice*)

9

Sara Coelho (NYSBN 4530267) (*admitted pro hac vice*)

599 Lexington Avenue

10

New York, New York 10022

11

*Proposed Counsel to the Debtors and Debtors in Possession*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT 1</u>**

**Proposed Order**

1
2
3
4
5
6

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

7

In re:

8
☒     NEVADA COPPER, INC.
☒     NEVADA COPPER CORP.
9
☒     NC DITCH COMPANY LLC
☒     NC FARMS LLC
10
☒     LION IRON CORP.
☒     0607792 B.C. LTD.
11

Debtors.[1]

12
13

Lead Case No.:  24-50566-hlb
Chapter 11

Jointly Administered with:
Case No. 24-50567-hlb
Case No. 24-50568-hlb
Case No. 24-50569-hlb
Case No. 24-50570-hlb
Case No. 24-50571-hlb

Hearing Date:
Hearing Time:

14      **ORDER (I) APPROVING AUCTION AND BIDDING, NOTICING, AND ASSUMPTION**
**AND ASSIGNMENT PROCEDURES; (II) SCHEDULING CERTAIN DATES AND**
15      **DEADLINES WITH RESPECT THERETO; (III) APPROVING FORM NOTICE TO BE**
**PROVIDED TO INTERESTED PARTIES; AND (IV) GRANTING RELATED RELIEF**
16

Upon the *Debtors' Motion for Entry of an Order (I) (A) Approving the Auction and Bidding*

17

*Procedures; (B) Approving Stalking Horse Bid Protections; (C) Scheduling Certain Dates and*

18

*Deadlines with Respect Thereto and an Auction; (D) Approving the Form and Manner of Notice*

19

*Thereof; (E) Approving the Form APA; and (II) (A) Establishing Notice and Procedures for the*

20

*Assumption and Assignment of Contracts and Leases; (B) Authorizing the Assumption and*

21

*Assignment of Assumed Contracts; (C) Authorizing the Sale of Assets; and (III) Granting Related*

22

*Relief* (the "***Motion***")[2] of the Debtors for entry of an order (this "***Order***"), (i) approving the

23

proposed marketing, auction, and bidding procedures attached hereto as **<u>Exhibit A</u>** (the "***Bidding***

24

---

25      [1]    The Debtors in these chapter 11 cases and the last four digits of their registration numbers in the jurisdiction in
which they are organized are:  Nevada Copper, Inc. (1157) (Nevada); Nevada Copper Corp. (5323) (British
26      Columbia); 0607792 B.C. Ltd. (2524) (British Columbia); Lion Iron Corp. (2904) (Nevada); NC Farms LLC
(0264) (Nevada); and NC Ditch Company LLC (4396) (Nevada).
27
[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.
28

*Procedures*") by which the Debtors will solicit and select the highest or otherwise best offer(s) for the sale or sales (collectively, the "***Sale***," and each such sale transaction, a "***Sale Transaction***") of all, substantially all, or any portion of the Debtors' assets (the "***Assets***"); (ii) establishing certain dates and deadlines related thereto and scheduling an auction or auctions, if any, for the Sale (the "***Auction***"); (iii) approving the manner of notice of the Auction and sale hearing (the "***Sale Hearing***") as may be necessary; (iv) approving a form of asset purchase agreement, substantially in the form attached hereto as **Exhibit D** (the "***Form APA***"); (v) approving procedures for the assumption and assignment of certain Executory Contracts (as defined below) and Unexpired Leases (as defined below) in connection with the Sale Transaction, if any; (vi) approving the break-up fee and expense reimbursements relating to potential stalking horse bidders if the Debtors determine to enter into such an arrangement with a bidder for the Assets (the "***Stalking Horse Bid Protections***"); and (vii) granting related relief; all as more fully set forth in the Motion; and upon the Sale Declaration and First Day Declaration; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and that this Court may enter a final order consistent with Article III of the United States Constitution; and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and, under the circumstances, proper and adequate notice of the Motion and the hearing thereon having been given; and it appearing that no other or further notice is necessary; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and it appearing that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

1.      <u>Jurisdiction and Venue</u>.   Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).   Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334.

2.    <u>Statutory and Legal Predicates</u>.  The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 3017 and 6004.

3.    <u>Bidding Procedures</u>.  The Debtors have articulated good and sufficient business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are fair, reasonable, and appropriate.  The Bidding Procedures are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Debtors' business resulting in the highest or otherwise best offer.  The Bidding Procedures comply with the requirements of Local Rule 6004.

4.    <u>Sale Notice</u>.  The Sale Notice attached hereto as **<u>Exhibit B</u>** and the procedures with respect to such Sale Notice contain the type of information required under Bankruptcy Rule 2002 and Local Rule 6004 and comply in all respects with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

5.    <u>Assumption and Assignment Procedures</u>.  The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures.  The Assumption and Assignment Procedures, including the Assumption and Assignment Notice attached hereto as **<u>Exhibit C</u>**, are fair, reasonable, and appropriate.  The Assumption and Assignment Procedures provide an adequate opportunity for all Counterparties to raise any objections to the proposed assumption and assignment or to the proposed Cure Amounts.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

6.    <u>Notice</u>.  All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto.  No further notice is required.

7.  <u>Relief is Warranted</u>.  The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

8.  <u>Other Findings</u>.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**NOW, AND THEREFORE, IT IS HEREBY ORDERED THAT:**

9.  The Motion is GRANTED as set forth herein.

**I.    The Bidding Procedures**

10.  The Bidding Procedures, substantially in the form attached to this Order as **Exhibit A**, are approved and incorporated into this Order by reference, as though fully set forth herein.  Accordingly, the failure to recite or reference any particular provision of the Bidding Procedures shall not diminish the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

11.  Any deposit (including any Good Faith Deposit) provided by a Qualified Bidder shall be held in escrow by the Debtors or their agent on terms acceptable to the Debtors (in consultation with the Consultation Parties), and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Bidding Procedures, or order of this Court, as applicable.

**II.   Important Dates and Deadlines**

12.  <u>Sale Hearing</u>.  The Sale Hearing will commence on **Wednesday, September 25, 2024, at 10:00 a.m.** (prevailing Pacific Time).  Subject to the terms of the Bidding Procedures, the Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties and with the consent of the Successful Bidder(s), adjourn or reschedule any Sale Hearing, with notice to the Sale Notice Parties.

4

13.     <u>Sale Objection Deadline</u>.  Any objections to the Sale (a "***Sale Objection***") by a Sale Notice Party must be made by **Friday, September 19, 2024, at 12:00 p.m.** (prevailing Pacific Time) (the "***Sale Objection Deadline***").[3]  The Sale Objection Deadline may be extended by the Debtors with the consent of the Court.

14.     <u>Competitive Bidding</u>.  The following dates and deadlines regarding competitive bidding are hereby established, in each case subject to extension in accordance with the Bidding Procedures:

      i.     <u>Bid Deadline</u>:  **Friday, September 6, 2024, at 12:00 p.m.** (prevailing Pacific Time), the deadline by which all Qualified Bids must be actually received in writing by the Bid Notice Parties (the "***Bid Deadline***"); and

     ii.     <u>Auction</u>:  **Tuesday, September 10, 2024, at 12:00 p.m. (prevailing Eastern Time)**, is the date and time the Auction, if one is needed, will be held at the New York offices of Allen Overy Shearman Sterling US LLP, 599 Lexington Avenue, New York, NY  10022, or at such other time and location (including via remote video) as designated by the Debtors, in consultation with the Consultation Parties and providing notice to the Sale Notice Parties, and subject to the terms of the Bidding Procedures.

15.     <u>Stalking Horse Bidders and Bid Protections</u>.  The Debtors, upon entry of this Order, shall be authorized, but are not obligated or directed, in an exercise of their reasonable business judgment, (i)  in consultation with the Consultation Parties and (ii) with the consent of the DIP Lenders, to select one or more Stalking Horse Bidders with respect to some or all of the Debtors' Assets by no later than **August 17, 2024, at 5:00 p.m., prevailing Pacific Time**, enter into a Stalking Horse Agreement that would provide such Stalking Horse Bidders with Stalking Horse Bid Protections without further action or order by this Court; *provided*, *however*, that if a  DIP Lender, or any affiliate of a DIP Lender, has expressly indicated to the Debtors that it is considering submitting, or has actually submitted, a Bid for any Assets, it shall not have consent rights with respect to the selection of the Stalking Horse Bidder or any protections to be afforded to such Stalking Horse Bidder.

---

[3]     In the event that the Debtors, in consultation with the Consultation Parties, reasonably determine in their business judgment to pursue a Sale Transaction pursuant to a chapter 11 plan, a separate deadline to object to such Sale Transaction shall be set by further order of this Court.

16.     In the event that the Debtors enter into a Stalking Horse Agreement with one or more Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court (the "***Stalking Horse Notice***") and serve the Stalking Horse Notice on the Stalking Horse Bidder and the Office of the United States Trustee for Region 17. The Stalking Horse Notice shall:  (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (iii) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specify any proposed Bid Protections (including the amount and calculation thereof); (v) specify the Assets included in the Stalking Horse Bid; (vi) attach the Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (vii) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections.  If there are no objections to the Stalking Horse Notice within five business days of filing with the Court, (the "***Notice Period***"), the Debtors may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing.  If a party timely files an objection to the Stalking Horse Notice in accordance with the Bidding Procedures, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.  Upon entry of the order that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement or otherwise approves the Stalking Horse's Plan Term Sheet, as applicable, the Debtors are authorized, but not directed, to incur and pay the Stalking Horse Bid Protections to each Stalking Horse Bidder in an aggregate amount not to exceed three percent of the proposed Purchase Price.

17.     Except as otherwise set forth in the Bidding Procedures, no person or entity, other than a Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for

expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

**III.    Sale Notice Procedures**

18.    The Sale Notice procedures, substantially in the form set forth in the Sale Notice attached to this Order as **Exhibit B**, are approved.  The Debtors are authorized to implement the Sale Notice procedures as set forth in the Bidding Procedures Motion, the Bidding Procedures, and the Sale Notice.

**IV.    Assumption and Assignment Procedures**

19.    The (a) Assumption and Assignment Procedures, as set forth in the Bidding Procedures, and (b) the Assumption and Assignment Notice in the form attached to this Order as **Exhibit C**, are approved.

20.    The Assumption and Assignment Procedures shall govern the assumption or assumption and assignment of all of the Debtors' Contracts and Leases to be assumed or assumed and assigned in connection with the Sale, subject to the payment of any amounts necessary to cure any defaults arising under any such Contract or Lease.

**V.    Related Relief**

21.    The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

22.    All persons and entities (whether or not selected as a Qualified Bidder) that submit a bid for any of the Debtors' Assets during the sale process, including at the Auctions, shall be deemed to have knowingly and voluntarily (i) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auctions, and any Sale; (ii) consented to the entry of a final order by the Court in connection with the Motion or this Order (including any disputes relating to the Bidding and Auction Process, the Auctions, and/or any Sale) to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (iii) waived any right to jury trial in connection with any disputes relating to any of the foregoing matters.

23.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014, or any applicable provisions of the Bankruptcy Rules or the Local Rules or otherwise stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

24.    Prior to mailing and publishing the Sale Notice and the Assumption and Assignment Notice, as applicable, the Debtors may fill in any missing dates and other information, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

25.    To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

26.    The Debtors are authorized to take all actions reasonably necessary or appropriate to effectuate the relief granted in this Order.

27.    The Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**IT IS SO ORDERED.**

# # #

In accordance with LR 9021, counsel submitting this **ORDER (I) APPROVING AUCTION AND BIDDING, NOTICING, AND ASSUMPTION AND ASSIGNMENT PROCEDURES; (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO; (III) APPROVING FORM NOTICE TO BE PROVIDED TO INTERESTED PARTIES; AND (IV) GRANTING RELATED RELIEF** certifies that the order accurately reflects the court's ruling and that (check one):

☐    The Court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document].

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

Prepared and submitted by:

McDONALD CARANO LLP

*/s/ Ryan J. Works*
Ryan J. Works (NSBN 9224)
Amanda M. Perach (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

ALLEN OVERY SHEARMAN STERLING US LLP
Fredric Sosnick (New York Bar No. 2472488) (*admitted pro hac vice*)
Sara Coelho (New York Bar No. 4530267) (*admitted pro hac vice*)
599 Lexington Avenue
New York, New York 10022
fsosnick@aoshearman.com
sara.coelho@aoshearman.com

*Proposed Counsel to the Debtors and Debtors in Possession*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A

**Bidding Procedures**

1
2
3
4
5
6
7

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

☒    NEVADA COPPER, INC.
☒    NEVADA COPPER CORP.
☒    NC DITCH COMPANY LLC
☒    NC FARMS LLC
☒    LION IRON CORP.
☒    0607792 B.C. LTD.

Debtors.[1]

Lead Case No.: 24-50566-hlb
Chapter 11

Jointly Administered with:
Case No. 24-50567-hlb
Case No. 24-50568-hlb
Case No. 24-50569-hlb
Case No. 24-50570-hlb
Case No. 24-50571-hlb

8

## BIDDING PROCEDURES

9
10
11
12

On June 10, 2024, Nevada Copper, Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13
14
15
16
17

On [___], 2024, the United States Bankruptcy Court for the District of Nevada (the "***Court***") entered an order (ECF No. [___]) (the "***Bidding Procedures Order***").[2]  In the Bidding Procedures Order, the Court approved the following procedures (the "***Bidding Procedures***") setting forth the process by which the Debtors are authorized to solicit bids for and conduct an auction (the "***Auction***") for a sale or disposition of all or substantially all of the Debtors' Assets (as defined herein) or any portion thereof, either as a going concern or as a liquidation (collectively, the "***Sale***," and each such sale transaction, a "***Sale Transaction***").   On [June ___], 2024, the Debtors filed a proposed form of asset purchase agreement (the "***Form APA***") on the docket of the Chapter 11 Cases.

18
19
20

**Copies of the Bidding Procedures Motion, Bidding Procedures Order, Bidding Procedures, the Form APA, and any other documents filed in the Debtors' chapter 11 cases are available upon request, by calling the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC (i) for U.S. parties, toll-free at (877) 635-8338, or (ii) for non-U.S. parties, at +1 (971) 306-8096, or by visiting the Debtors' restructuring website at https://dm.epiq11.com/case/nevadacopper.**

21

## Description of the Assets to Be Auctioned

22
23

The Debtors are seeking to sell all of their assets as a going concern (or as a liquidation) pursuant to the terms of the Form APA.  These assets include, but are not limited to, the Debtors' going-concern business, real property, unexpired leases, executory contracts, equipment,

24
25
26
27
28

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their registration numbers in the jurisdiction in which they are organized are:  Nevada Copper, Inc. (1157) (Nevada); Nevada Copper Corp. (5323) (British Columbia); 0607792 B.C. Ltd. (2524) (British Columbia); Lion Iron Corp. (2904) (Nevada); NC Farms LLC (0264) (Nevada); and NC Ditch Company LLC (4396) (Nevada).

[2]    Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in the Bidding Procedures Order or the Motion requesting the relief granted therein, as applicable.

inventory, supplies, intellectual property, insurance proceeds, prepaid expenses and deposits, ownership interests, and books and records (collectively, the "*Assets*"), in each case, free and clear of all liens, claims, interests, or other encumbrances, other than expressly assumed liabilities and obligations, to the fullest extent permitted by the Bankruptcy Code.

The ability to undertake and consummate any sale of the Assets shall be subject to competitive bidding as set forth herein and approval by the Court. The Debtors will consider bids that are made for all or substantially all of the Assets. In addition, the Debtors will consider bids for less than substantially all of the Assets, however, the value of such bids will be evaluated against the Debtors intention to sell all of their Assets, and the value and complexity of the sale of any Assets not included in a bid. The Debtors will also consider bids that take the form of a sale of stock of one or more subsidiaries.

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker, Moelis & Company LLC (Attn: Douglas Pierson (Douglas.Pierson@moelis.com), Zul Jamal (Zul.Jamal@moelis.com), Jay Finney (Jay.Finney@moelis.com), Patrick Loftus-Hills (Patrick.Loftus-Hills@moelis.com)).

### Important Dates and Deadlines

| Date | Deadline |
|---|---|
| **Monday, July 29, 2024, or as soon as reasonably practicable after entry of the Bidding Procedures Order** | Service of Sale Notice; Publication of Sale Notice |
| **Tuesday, July 30, 2024, or as soon as reasonably practicable thereafter** | Serve notice of potential assumption and assignment (the "*Assumption and Assignment Notice*") to contract counterparties |
| **Tuesday, August 20, 2024 (or 21 days after service of an applicable notice of assumption and assignment)** | Deadline to object to proposed cure amounts and assumption and assignment (the "*Assumption and Cure Objection Deadline*") |
| **Friday, September 6, 2024, at 5:00 p.m. (prevailing Pacific Time)** | Bid Deadline |
| **Monday, September 9, 2024, at 9:00 a.m. (prevailing Pacific Time)** | Qualified Bid Designation Date |
| **Tuesday, September 10, 2024, at 12:00 p.m. (prevailing Eastern Time)** | Auction (if necessary) to be held at the New York offices of A&O Shearman, or such other location announced to the bidders and Consultation Parties |
| **Thursday September 12, 2024** | Serve Notice of Successful Bidder on Contract Counterparties |
| **Friday, September 19, 2024, at 12:00 p.m. (prevailing Pacific Time)** | Deadline to object to the proposed Sale ("*Sale Objection Deadline*"); deadline to object to adequate assurance ("*Adequate Assurance Objection Deadline*"). |

| | |
|---|---|
| **Tuesday, September 24, 2024, at 12:00 p.m. (prevailing Pacific Time)** | Deadline for responses to objections. |
| **Wednesday, September 25, 2024, at 10:00 a.m. (prevailing Pacific Time)[3]** | Sale Hearing |
| **Thursday, September 26, 2024** | Entry of Sale Order |
| **On or before Monday, October 8, 2024** | Closing |

**<u>Noticing</u>**

<u>Consultation Parties</u>

Subject to the terms of these Bidding Procedures, the Debtors shall consult in good faith with counsel to (each of the following parties, to the extent applicable, including such party's advisors, a "***Consultation Party***"):

     i.       any Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "***Creditors' Committee***");

    ii.      the DIP Lenders, c/o Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Brad Kahn; and 2001 K Street NW, Washington D.C. 20006, Attn: Kate Doorley; and

   iii.      only to the extent that any Assets situated in Canada are proposed to be sold, the information officer ("***Information Officer***") appointed in the recognition proceedings in respect of the Debtors under the *Companies' Creditors Arrangement Act*.

Notwithstanding the foregoing, the consultation rights afforded herein shall not: (i) limit the Debtors' discretion in any way with respect to the evaluation of bids, compliance with these procedures, and other matters, including at the Auction; (ii) include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment; or (iii) otherwise limit the Debtors' reservation of rights in respect of their fiduciary obligations, including as described herein. Moreover, notwithstanding the foregoing, if a DIP Lender, or an affiliate of a DIP Lender, indicates that it is considering submitting, or actually submits, a Qualified Bid in respect of all or a portion of the Assets, such party shall have Consultation Rights only to the extent that such consultation reasonably can be performed without providing any confidential information regarding the sale of such Assets to the DIP Lenders. Nothing in these Bidding Procedures shall affect any rights or obligations under the DIP Facility.

If a member or an affiliate of a member of the Creditors' Committee submits a Qualified Bid in respect of all or a portion of the Assets, the Creditors' Committee will continue to have

---

[3]    Subject to the availability and convenience of the Court.

Consultation Rights; *provided* that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of such Assets and shall not provide any confidential information regarding the sale of such Assets to such member.

<u>Bid Notice Parties</u>

All Bids must be submitted in writing to the following parties (collectively, the "***Bid Notice Parties***"):

 i. the Debtors, c/o Nevada Copper, Inc., 61 E. Pursel Lane, P.O. Box 1640, Yerington, NV 89447 (Attn: Gregory J. Martin (gjmartin@nevadacopper.com));

 ii. the Debtors' counsel, (a) Allen Overy Shearman Sterling US LLP, 599 Lexington Avenue, New York, NY 10022 (Attn: Fredric Sosnick (fsosnick@aoshearman.com), Sara Coelho (sara.coelho@aoshearman.com), Cody Wright (cody.wright@aoshearman.com); and (b) Torys LLP, 79 Wellington St. W., 30th Floor, Box 270, TD South Tower Toronto, Ontario M5K 1N2 Canada (Attn: Tony DeMarinis (tdemarinis@torys.com) and Michael Amm (mamm@torys.com)); and

 iii. the Debtors' investment banker, Moelis & Company, 399 Park Ave 4th Floor, New York, NY 10022 (Attn: Douglas Pierson (Douglas.Pierson@moelis.com), Zul Jamal (Zul.Jamal@moelis.com), Jay Finney (Jay.Finney@moelis.com), Patrick Loftus-Hills (Patrick.Loftus-Hills@moelis.com)).

The Debtors shall provide copies of any Bids received to the Consultation Parties within one Business Day of receipt.

<u>Sale Notice Parties</u>

Information that must be provided to the "***Sale Notice Parties***" under these Bidding Procedures must be provided to the following parties:

 i. the Consultation Parties (as applicable);

 ii. all persons and entities, known by the Debtors and their advisors to have expressed an interest in a transaction with respect to any of the Debtors' Assets during the past 12 months (for whom identifying information and addresses are available to the Debtors);

 iii. all persons and entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in any Asset (for whom identifying information and addresses are available to the Debtors), including all known holders of claims and all creditors prior to the date of entry of the Bidding Procedures Order;

 iv. all parties to litigation with the Debtors that are known as of the date of entry of the Bidding Procedures Order, or their counsel of record;

 v. all Counterparties to Assigned Contracts and Leases under the proposed Sale;

 vi. any Governmental Authority known to have a claim in these Chapter 11 Cases;

 vii. the United States Attorney for the District of Nevada;

4

viii.   the Office of the Attorney General (or equivalent) in each state or province in which the Debtors operate;

ix.   the Office of the Secretary of State (or equivalent) in each state or province in which the Debtors operate or are organized;

x.   the Federal Trade Commission;

xi.   the United States Attorney General/Antitrust Division of Department of Justice;

xii.   the Information Officer c/o Alvarez & Marsal Canada Inc., Royal Bank Plaza, South Tower 200 Bay Street, Suite 3501 Toronto ON M5J 2J1 Canada, (Attn: Al Hutchens (ahutchens@alvarezandmarsal.com));

xiii.   Counsel to the Information Officer, Cassels Brock & Blackwell LLP, Suite 3200, Bay Adelaide Centre – North Tower, 40 Temperance Street, Toronto, Ontario M5H 0B4 (Attn:  Natalie E. Levine (nlevine@cassels.com));

xiv.   all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors);

xv.   the Master Service List maintained by the Debtors' Notice and Claims Agent; and

xvi.   all other Persons directed by the Court (for whom identifying information and addresses are available to the Debtors).

<u>Public Announcement of Sale and Auction</u>

By July 29, 2024, or as soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, on one occasion in *The Wall Street Journal (National Edition)*, to provide notice to any other potential interested parties, and post the Sale Notice on their case website, **https://dm.epiq11.com/case/nevadacopper**.

### **Potential Bidder Requirements**

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Assets or part of the Assets (a "***Potential Bidder***") must deliver or have previously delivered to the Debtors the following preliminary documentation (collectively, the "***Preliminary Bid Documents***"):

i.   an executed confidentiality agreement (a "***Confidentiality Agreement***") in form and substance acceptable to the Debtors;

ii.   sufficient information that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the Debtors' Assets, the adequacy of which must be acceptable to the Debtors, in consultation with the Consultation Parties;

iii.   a statement indicating whether the Potential Bidder is requesting consent from the Debtors to partner with or otherwise work with any other interested party in connection with the potential submission of a joint Bid, the identity and domicile of any such party or parties, and a concise description of the nature of such

5

partnership or joint Bid to the extent reasonably practicable, which the Debtors may approve in their reasonable business judgment, in consultation with the Consultation Parties, on a case-by-case basis; and

iv.  any other information required (as determined by the Debtors in consultation with the Consultation Parties) to allow the Debtors, in consultation with the Consultation Parties, to determine that the Potential Bidder intends to receive due diligence information solely for purposes consistent with these Bidding Procedures.

The Debtors, in consultation with their advisors and the Consultation Parties, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a bid (such Potential Bidder, an "*Acceptable Bidder*").  The Debtors shall promptly inform the Consultation Parties of any entity that becomes an Acceptable Bidder.  **For the avoidance of doubt, no Potential Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement**.

Promptly following the entry of these Bidding Procedures, the Debtors shall provide copies of all materials delivered by any Potential Bidder prior to the entry of these Bidding Procedures to the Consultation Parties and their counsel.

## Qualified Bid Requirements

To participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors an irrevocable offer for the purchase of some or all of the Assets (each, a "*Bid*"), and shall meet the following criteria, in each case, on or prior to the Bid Deadline (as defined below):

i.  **Purchased Assets and Assumed Liabilities**: Each Bid must clearly state the following: (a) the particular Assets, or the portion thereof identified with reasonable specificity, to be purchased and (b) the liabilities and obligations to be assumed, including any debt and cure costs to be assumed;

ii.  **Good Faith Deposit**: Except with respect to any Credit Bid, the Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "*Good Faith Deposit*") on terms acceptable to the Debtors in consultation with the Consultation Parties.  To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals 10% of the increased aggregate purchase price promptly and in no event later than one business day following the conclusion of the Auction;

iii.  **Purchase Price**: Each Bid must (a) clearly set forth the purchase price to be paid, assuming a purchase of the applicable Assets and any assumption of liabilities (the "*Purchase Price*"), (b) identify separately the cash and non-cash components of the Purchase Price, and (c) indicate the allocation of the Purchase Price among the applicable Assets; *provided* that, for the avoidance of doubt, such allocation shall not prejudice the rights of any party in interest to contest such allocation. The Purchase Price should be a single point value in U.S. Dollars for the applicable Assets on a cash-free, debt-free basis.  Any Bid for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all Assets or whether the Qualified Bid should be viewed as a separate Bid for one or more sets of Assets.  The Debtors will consider the value to the estate as a whole when evaluating bids for only certain of the Assets.  The Debtors reserve the right,

in consultation with the Consultation Parties, to ask any Acceptable Bidder to allocate the value ascribed to their Bid for any particular Asset and to inquire about any significant assumption on which such valuations are based;

iv.  **Same or Better Terms; Bid Documents**: Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "***Bid Documents***").  The Bid Documents shall include:  (a) the form of purchase agreement on which the Acceptable Bidder is prepared to transact, together with a redline of such agreement marked against the Form APA, (b) a schedule of contracts and leases to be assumed to the extent applicable to the Bid, (c) any other material documents integral to such Bid, and (d) a statement from the Acceptable Bidder that (1) it is prepared to enter into and consummate the transactions contemplated in the form purchase agreement, no later than ten days after the conclusion of the Auction, (or, if no Auction is held, the Bid Deadline (as defined below)), or if a later date is required, the reasons that such a later date is required; and (2) that the Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "***Back-Up Bid***")) until the consummation of the Sale Transaction;

v.  **No Qualified Bidder Bid Protections**: Each Bid, other than a Bid that has been designated as a Stalking Horse Bid (as defined herein), must include a statement that the Bid does not entitle such bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets;

vi.  **Employee Obligations**: Each Bid must indicate whether the Acceptable Bidder intends to hire all employees of the Debtor (or if applicable, all employees that are primarily employed in connection with the applicable Assets included in such Bid). If the Acceptable Bidder does not intend to hire all employees, the Acceptable Bidder must include a description of the Acceptable Bidder's intentions with respect to any employee that is not to be hired under the terms of the Bid;

vii.  **Sources of Financing**: To the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtors' satisfaction, in consultation with the Consultation Parties, that demonstrates that the Acceptable Bidder has received sufficient debt and equity funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Sale Transaction and other obligations under its Bid, including providing adequate assurance of future performance under all Contracts proposed to be assumed by such Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors;

viii.  **Contingencies; No Financing or Diligence Outs**: The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) and all diligence must be completed before the Bid Deadline.

ix.  **Identity**: Each Bid must fully disclose the identity and domicile of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom Moelis and A&O Shearman should contact regarding such Bid;

x.  **As-Is, Where-Is**: Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (a) has had an opportunity to conduct any and all due diligence prior to making its offer; (b) has relied solely upon its own independent review, investigation, and inspection of any documents and the assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement;

xi.  **Authorization**: Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

xii.  **Joint Bids**: The Debtors will be authorized to approve joint Bids in their reasonable business judgment, in consultation with the Consultation Parties, on a case-by-case basis, provided that a joint bid meets the Qualified Bid Requirements and the applicable bidders otherwise comply with these Bidding Procedures;

xiii.  **Adequate Assurance of Future Performance**: Each Bid must (a) identify any executory contracts (the "***Executory Contracts***") and any unexpired leases (the "***Unexpired Leases***") to be assumed or assumed and assigned in connection with the proposed Sale Transaction, (b) provide for the payment of all cure amounts (the "***Cure Amounts***") related to such Executory Contracts and Unexpired Leases by the Acceptable Bidder, (c) demonstrate, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties (as defined herein), that the Acceptable Bidder can provide adequate assurance of future performance under all such Executory Contracts and Unexpired Leases sufficient to satisfy the requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code, and (d) provide the following documentation:  (1)  the legal name of the proposed assignee of Unexpired Leases (the "***Proposed Assignee***") and any guarantors, as applicable; and (2) financial statements for the calendar years ended 2022 and 2023 for the Proposed Assignee and any guarantors, as applicable, and other financial information about the Proposed Assignee to demonstrate its ability to provide adequate assurance of future performance;

xiv.  **Acknowledgement of Compliance with Bidding Procedures, Bidding Order, Bankruptcy Code, and Non-Bankruptcy Law;** Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, Bankruptcy Code and any applicable non-bankruptcy law;

xv.  **No Collusion**: The Acceptable Bidder must acknowledge in writing (a) that it has not engaged in any collusion with respect to any Bids or the Sale Transaction,

8

specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the Sale Transaction. For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (email shall suffice) following the Debtors' consultation with the Consultation Parties;

xvi.    **Good Faith Offer**: The Bid must constitute a good faith, *bona fide* offer to consummate the Sale Transaction;

xvii.   **Irrevocable**: Each Bid must state that in the event such Bid is chosen as the Back-Up Bid (as defined below), it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction;

xviii.  **Back-Up Bid**: Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder (as defined below) if their Bid is the next highest or otherwise best bid;

xix.    **Regulatory Approvals and Covenants**: A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the Sale Transaction, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval would not be expected in time to allow a the closing of the Sale Transaction to occur by October 8, 2024, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible);

xx.     **Time Frame for Closing**: A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame for the Closing set forth above, or on such timeframe as may be acceptable to the Debtors, in consultation with the Consultation Parties; *provided*, that if the Acceptable Bidder expects to be unable to close on its Bid on or before October 7, 2024, its Bid should indicate the date on which it expects to be able to close;

xxi.    **No Fees**: Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid, the Acceptable Bidder is agreeing to disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or other similar form of compensation; and that, for the avoidance of doubt, each Acceptable Bidder by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their reasonable business judgment, in consultation with the Consultation Parties, to provide the Stalking Horse Bid Protections (as defined below) to one or more stalking horse bidders (each, a "***Stalking Horse Bidder***") in accordance with these Bidding Procedures;

xxii.   **Adherence to Bidding Procedures**: By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction;

9

xxiii.  **Consent to Jurisdiction**: The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale, the Sale Transaction and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable; and

xxiv.  **Conditions to Closing**: Each Bid must identify with particularity each and every condition to closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required.

Only Bids fulfilling all of the preceding requirements contained herein may be deemed to be Qualified Bids; *provided*, that a Bid not otherwise satisfying all of the preceding requirements may be designated a Qualified Bid, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties.  Only those parties submitting Qualified Bids may be deemed to be Qualified Bidders.

Neither the Debtors nor any of their advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Assets, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Assets with governmental laws, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Assets. All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the applicable Assets, except to the extent expressly provided in the Bankruptcy Court's order approving the Sale Transaction.  Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Assets or relating thereto that the Debtors, any advisor, or agent representing or purporting to represent the Debtors to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtors only) specifically set forth in the Bankruptcy Court's order approving the Sale Transaction.

Within one business day after the Bid Deadline (the "*Qualified Bid Designation Date*"), the Debtors, in consultation with the Consultation Parties, shall determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided* that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may provide the Acceptable Bidder with the opportunity to remedy any deficiencies prior to the Auction.

## Right to Credit Bid

The DIP Lenders, and any other Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates each (a "**Secured Creditor**") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim (a "**Credit Bid**") only with respect to the collateral by which such Secured Creditor is secured; *provided* that (i) any Credit Bid shall be conditioned on payment in full in cash of the DIP Facility, unless the DIP Lenders consent to a different treatment of such claims and (ii) the rights of any other Secured Creditor to challenge a Credit Bid that does not repay the secured claim of such Secured Creditor are fully preserved.

## Obtaining Due Diligence Access

Only Acceptable Bidders shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and additional non-public information regarding the Debtors. Beginning on the date the Debtors determine that a party is an Acceptable Bidder, or as soon as reasonably practicable thereafter, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request.  The Debtors shall promptly consult with the Consultation Parties (a) with respect to any due diligence disputes that arise concerning any Acceptable Bidder and (b) prior to revoking due diligence access to any such entity.  The Debtors shall post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room for the benefit of all Acceptable Bidders.

Acceptable Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors.  The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except an Acceptable Bidder or such Acceptable Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors and their advisors, after consultation with the Consultation Parties, shall be permitted to coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline, after consultation with the Consultation Parties, to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction. For any bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right, in consultation with the Consultation Parties, to withhold or modify any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets (i) to any person or entity who is not an Acceptable Bidder and (ii) if and to the extent doing so would (a) violate any laws to which the Debtors are subject, including any privacy laws; (b) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party; (c) violate any legally-binding obligation of any Debtor with respect to confidentiality, non-disclosure, or privacy; or (d) jeopardize protections afforded to any Debtor under the attorney-client privilege or the attorney

work product doctrine (provided, the Debtors shall use commercially reasonable efforts to (1) provide such access as can be provided (or otherwise convey such information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation, or law; and (2) provide such information in a manner without violating such privilege, doctrine, contract, obligation or law).

The Debtors shall provide the Consultation Parties periodic updates regarding the activity of each Acceptable Bidder in the electronic data room in a form and frequency mutually acceptable to the Debtors and the Consultation Parties; provided that the Debtors shall cooperate in good faith to provide any such information reasonably requested by the Consultation Parties.

Communications with Acceptable Bidders (including Qualified Bidders)

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, from Acceptable Bidders (including any Qualified Bidders) shall be through Moelis.

Due Diligence and Indications of Interest from Acceptable Bidders (including Qualified Bidders)

Each Acceptable Bidder (including, as applicable, any Qualified Bidder) shall:

i.    Provide a preliminary indication of interest as requested by the Debtors or their advisors, together with any other information or materials requested in connection therewith (collectively, an "***Indication of Interest***"); and

ii.   Comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Acceptable Bidder (including any Qualified Bidder) to consummate its contemplated transaction.

Failure by an Acceptable Bidder (including, as applicable, any Qualified Bidder, other than the Stalking Horse Bidder, if any) to provide an acceptable Indication of Interest or comply with reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer an Acceptable Bidder or that a Bid made by such bidder is not a Qualified Bid.

### **Bid Deadline**

An Acceptable Bidder that desires to make a bid on one or more of the Assets shall deliver Binding Bids to the Bid Notice Parties no later than **September 6, 2024, at 5:00 p.m. (prevailing Pacific Time)** (the "***Bid Deadline***"); provided that the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain Potential Bidders, without further order of the Court, subject to providing notice to all Potential Bidders and the Consultation Parties.

### **Evaluation of Qualified Bids**

The Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' business judgment, and in consultation with the Consultation Parties, the highest or otherwise best Qualified Bid or combination of Qualified Bids for any Assets (the "***Starting Bid***"). The Debtors shall promptly provide to the Consultation Parties copies of all Bids received by the Debtors, including the Starting Bid, but in no event later than the next business day following receipt; *provided* that the Consultation Parties and the U.S. Trustee must treat such Bids and any

related information as confidential and shall not publicly disclose such information without the prior written consent of the Debtors and the applicable bidder.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors, in addition to any other factors that the Debtors deem appropriate: (i) the amount and nature of the total consideration; (ii) the Qualified Bidder's ability to close a transaction and the timing thereof; (iii) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (iv) the tax consequences of such Qualified Bid; (v) the treatment of employee liabilities; and (vi) the liabilities and obligations to be assumed pursuant to such Qualified Bid. Prior to commencing the Auction, the Debtors shall notify the Stalking Horse Bidder, if any, and all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction with respect to the applicable assets. At such time, the Debtors shall also distribute copies of the Starting Bid to the Stalking Horse Bidder, if any, and each Qualified Bidder.

## Stalking Horse Protections

At any time until 20 days prior to the Bid Deadline, the Debtors shall be authorized, but not obligated, in an exercise of their reasonable business judgment, (i) in consultation with the Consultation Parties and (ii) with the consent of the DIP Lenders, to (a) select one or more Acceptable Bidders to act as the Stalking Horse Bidder in connection with the Auction for such assets, and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder and subject in all respects to approval of the Court, (x) provide a break-up fee and (y) agree to reimburse the reasonable and documented out of pocket fees and expenses the ("**Stalking Horse Bid Protections**") in an aggregate amount of break-up fee and reimbursement of expenses not to exceed three percent of the Purchase Price; *provided*, *however*, that if a DIP Lender, or any affiliate of a DIP Lender, has expressly indicated to the Debtors that it is considering submitting, or has actually submitted, a Bid for any Assets, it shall not have consent rights with respect to the selection of the Stalking Horse Bidder or any protections to be afforded to such Stalking Horse Bidder.

In the event that the Debtors enter into a Stalking Horse Agreement with one or more Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court (the "**Stalking Horse Notice**") and serve the Stalking Horse Notice on the Stalking Horse Bidder and the U.S. Trustee. The Stalking Horse Notice shall: (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Stalking Horse Bidder's bid (the "**Stalking Horse Bid**") and what portion (if any) is cash; (iii) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specify any proposed Bid Protections (including the amount and calculation thereof); (v) specify the Assets included in the Stalking Horse Bid; (vi) attach the Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (vii) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections. If there are no objections to the Stalking Horse Notice within five business days of filing with the Court, (the "Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing. If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period or as soon thereafter as the Court is available.

Except as otherwise set forth herein, no person or entity, other than a Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have

waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

### No Qualified Bids

If no Qualified Bids other than the Bid submitted by the Stalking Horse Bidder (the "*Stalking Horse Bid*"), if any, are received for the Assets included in the Stalking Horse Bid by the Bid Deadline, then the Debtors may cancel the Auction with respect to such Assets. If any Stalking Horse Bid is the only Qualified Bid received by the Bid Deadline, the Debtors may decide, in their reasonable business judgment, after consultation with the Consultation Parties, to designate the Stalking Horse Bid as the Successful Bid (as defined below) as to the applicable Assets and pursue entry of an order approving a Sale Transaction with respect to such Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement. The Debtors promptly shall file notice of any cancellation of the Auction with the Court.

### Auction

Other than as expressly set forth herein, if the Debtors receive more than one Qualified Bid for the Assets (or, if applicable, any portion of Assets) by the Bid Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder in their reasonable business judgment, in consultation with the Consultation Parties, with respect to such Assets or portion of Assets. If the Debtors do not receive a Qualified Bid for any particular Asset by the Bid Deadline, the Debtors will not conduct the Auction with respect to such Asset. If one or more Qualified Bids (other than the Stalking Horse Bid, if any) are received by the Bid Deadline with respect to the applicable Assets, then the Debtors shall conduct the Auction with respect to such Assets in accordance with the Auction Procedures (as defined below) and shall consult with the Consultation Parties throughout the Auction process (to the extent such Consultation Parties have not submitted a Qualified Bid).

The Auction shall commence on **September 10, 2024 at 12:00 p.m. (prevailing Eastern Time) at the New York offices of A&O Shearman** or such later time or other place as the Debtors determine in consultation with the Consultation Parties.

The Auction will be conducted in accordance with the following procedures (the "*Auction Procedures*"):

    i.     the Auction will be conducted openly; *provided* that, except as otherwise determined by the Debtors in consultation with the Consultation Parties, only (a) the Debtors, (b) the Consultation Parties, (c) representatives of the Office of the United States Trustee, (d) any statutory committee appointed in these Chapter 11 Cases, (e) any other Qualified Bidders, and (f) the respective representatives and professionals of the foregoing parties shall be entitled to participate in the Auction, however, any party in interest may be permitted to attend the Auction;

    ii.    except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auction;

    iii.   the Qualified Bidders, including any Stalking Horse Bidders, if any, must appear in person or through duly-authorized representatives at the Auction;

    iv.   bidding shall begin with the Starting Bid;

    v.    subsequent bids (each, an "*Overbid*") may only be made at the Auction and shall be at least (a) a 2% increase in cash, cash equivalents, or other such consideration

that the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, deem equivalent over the previous bid *plus* (b) in the event that the Debtors have entered into a Stalking Horse Agreement with respect to the Assets to which the Overbid relates, the aggregate amount of Bid Protections (including, for the avoidance of doubt, any break-up fees and expense reimbursements) under such Stalking Horse Agreement (a "***Minimum Overbid***"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid. The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, announce increases or reductions to the Minimum Overbid at any time during the Auction. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, deem equivalent that exceeds the then existing highest Bid by at least the amount of the Minimum Overbid

vi.     at the commencement of the Auction, the Debtors, in consultation with the Consultation Parties, may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s);

vii.    each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors in consultation with the Consultation Parties;

viii.   during the course of the Auction, the Debtors shall, after submission of each Overbid and consultation with the Consultation Parties (to the extent such Consultation Parties have not submitted a Qualified Bid), promptly inform each Qualified Bidder of the terms of the previous bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtors' view, in consultation with the Consultation Parties, the highest or otherwise best bid(s) for the applicable Assets (the "***Prevailing Highest Bid***");

ix.     to remain eligible to participate in the Auction, in each round of bidding, each Qualified Bidder, except the Qualified Bidder(s) that submitted the Prevailing Highest Bid, must submit an Overbid with respect to such round of bidding. To the extent a Qualified Bidder that did not submit the Prevailing Highest Bid fails to submit an overbid with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction; *provided*, the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties (to the extent such Consultation Parties have not submitted a Qualified Bid), may permit a bidder that has been disqualified to take part in the Auction solely to the extent a Qualified Bidder that has not been disqualified has agreed (after receiving express permission from the Debtors upon consultation with the Consultation Parties) to permit such disqualified bidder to join such Qualified Bidder in its next-round Bid as an additional purchaser party or debt or equity financing source;

x.      the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

xi.     each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction. For the avoidance of doubt, this requirement does not restrict

15

Qualified Bidder(s) from working with other Qualified Bidder(s) with the Debtors' prior written consent;

xii.     each Qualified Bidder will be required to confirm that its bid is a good faith, *bona fide* offer and it intends to consummate the Sale Transaction if selected as the Successful Bid in accordance with these Bidding Procedures (as may be modified in accordance herewith at the Auction);

xiii.    the Court and the Debtors will not consider bids made after the Auction has been closed;

xiv.    the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale Transaction, or (c) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders;

xv.     the Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction;

xvi.    the Debtors reserve the right, in their reasonable business judgment, and in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, and in consultation with the Consultation Parties, may require in order to determine that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and equity funding commitments to consummate the proposed transaction at the prevailing amount; and

xvii.   notwithstanding anything herein to the contrary, the Debtors may, in consultation with the Consultation Parties, at any time choose to adjourn the Auction by announcement at the Auction; *provided*, that in the event of an adjournment of the Auction, the Debtors promptly shall file notice thereof with the Court.

Any Auction rules adopted by the Debtors will not modify any of the terms of the Stalking Horse purchase agreement or the rights of the Stalking Horse Bidder, if any, without the consent of the Stalking Horse Bidder, if any.

## Acceptance of the Successful Bidder

The Auction shall continue until (i) there is only one Qualified Bid or a combination of Qualified Bids that the Debtors determine, in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, and in consultation with the Consultation Parties, is the highest or otherwise best bid to purchase the applicable Assets (each, a "***Successful Bid***"), and (ii) the Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, that further bidding is unlikely

16

to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors, at which point, the Auction will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors, in consultation with the Consultation Parties, may consider the following factors in addition to any other factors that the Debtors deem appropriate: (i) the amount and nature of the total consideration, which includes but is not limited to, assumed liabilities (administrative liabilities, cure payments), and the amount of executory contracts and leased locations being assumed; (ii) the Qualified Bidder's ability to close a transaction and the timing thereof; (iii) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (iv) the tax consequences of such Qualified Bid; (v) the treatment of employee liabilities; and (vi) any other consideration that may impact the Debtors' estates or stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a "**Successful Bidder**" with respect to the Assets contemplated for the purchase pursuant to such Successful Bid. The Debtors shall file notice of the Successful Bid and the Successful Bidder with the Court as soon as reasonably practicable after conclusion of the Auction. Following conclusion of the Auction and selection of a Successful Bidder, the Debtors shall present the results of the Auction at a hearing (the "***Sale Hearing***") at which the Debtors shall seek Court approval to enter into a binding purchase agreement with the Successful Bidder on the terms of the Successful Bid (the order approving such entry, the "***Definitive Purchase Agreement Order***"). For the avoidance of doubt, the Definitive Purchase Agreement Order shall deem the Debtors' selection of the Successful Bid final; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that it determined in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Within one business day of the selection of the Successful Bidder, such Successful Bidder (including both the Stalking Horse Bidder, if any, and Back-Up Bidder, if applicable) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement. Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

### Designation of Back-Up Bidder

The Back-Up Bid to purchase any applicable Assets (the "***Back-Up Bidder***") will be determined by the Debtors at the conclusion of the Auction, in consultation with the Consultation Parties, and will be announced at that time to all the Qualified Bidders participating in the Auction. Following consultation with the Consultation Parties, the Debtors' selection of a Back-Up Bid shall be deemed final, and the Debtors shall not accept any further bids or offers to submit a bid after such selection. The Debtors will be authorized, but not required, to consummate the Transaction with the Backup Bidder without further order of the Bankruptcy Court, so long as such Backup Bid shall have been approved in connection with the Bankruptcy Court's approval of the Successful Bid, or subject to Bankruptcy Court approval if not.

If for any reason a Successful Bidder fails to consummate the purchase of such assets within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid for such assets, and the Back-Up Bidder shall be deemed a Successful

Bidder for such assets and shall be required to consummate any Sale Transaction with the Debtors as soon as is reasonably practicable without further order of the Court, following a notice being filed with the Court; provided, however, that the Debtors shall first provide notice to Contract counterparties implicated by any Back-Up Bidder's Bid and an opportunity to object to the assignment to the Back-Up Bidder within 5 days of receiving such notice. To the extent any objections are raised and remain unresolved, the Court may schedule a hearing on an expedited basis to adjudicate such objection.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) 45 days after completion of the Auction, (ii) consummation of a Sale Transaction with one or more Successful Bidders at an Auction, and (iii) the release of such Back-Up Bid by the Debtors in writing (the "Back-Up Termination Date"). The Debtors shall return the Back-Up Bidder's deposit owed within five business days of the Back-Up Termination Date.

## Approval of the Sale Transaction

A hearing to consider approval of each Sale Transaction (the "Sale Hearing"), currently is scheduled to take place on **September 25, 2024, at 10:00 a.m.** (prevailing Pacific Time), before the Honorable Hilary L. Barnes at the United States Bankruptcy Court for the District of Nevada, C. Clifton Young Federal Building, 300 Booth Street, Reno, NV 89509 (Courtroom 2) and telephonically.

At the Sale Hearing certain findings will be sought from the Court regarding the Auction, including, among other things, that: (1) the Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (2) the Auction was fair in substance and procedure; (3) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (4) consummation of any Sale Transaction as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the applicable Assets and is in the best interests of the Debtors and their estates. **The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice to creditors or other parties in interest prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder, if any).**

Objections to the Sale Transaction(s), and entry of any order approving the sale (the "*Sale Order*") must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (iii) be filed with the Court and served so as to by **actually received** by the Debtors, the Consultation Parties, the Bid Notice Parties, and the foregoing parties' respective counsel by September 19, 2024, at 12:00 p.m. (prevailing Pacific Time).[4]

## Return of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder or Successful Bidders, if any, will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.

---

[4] In the event that the Debtors, in consultation with the Consultation Parties, reasonably determine in their business judgment to pursue a Sale Transaction pursuant to a Plan, a separate deadline to object to such Sale Transaction shall be set by order of the Court.

If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable), if any, fails to consummate the Successful Bid (or Back-Up Bid, if applicable), then the Good Faith Deposit of such Successful Bidder (or Back-Up Bidder, if applicable) irrevocably will be forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within five business days after consummation of the applicable Sale Transaction.

The return of any Good Faith Deposits of any Stalking Horse Bidders will be subject to the terms of such Stalking Horse Bidders' Plan or purchase agreement, as applicable.  All such deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court.

### Commissions

Other than with respect to (i) any Stalking Horse Bid Protections that become payable pursuant to the terms of a Stalking Horse Agreement and (ii) any payment obligations with respect to the Debtors' investment banker, Moelis & Company, (a) the Debtors shall be under no obligation to pay any commissions, fees, or expenses to any bidder's agent, advisor or broker; (b) all commissions, fees, or expenses for any such agents, advisors, or brokers shall be paid by the applicable bidder at such bidder's discretion; and (c) in no case shall any commissions, fees, or expenses for any bidder's agent, advisor, or broker be deducted from any proceeds derived from any sale of the Assets.

### Reservation of Rights

The Debtors, in consultation with the Consultation Parties, reserve their rights to modify these Bidding Procedures in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction, additional customary terms and conditions on the sale of the applicable Assets, including, without limitation: (1) extending the deadlines set forth in the Bidding Procedures; (2) adjourning the Auction without further notice; (3) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (4) canceling the Auction; (5) rejecting any or all Bids or Qualified Bids; and (6) adjusting the applicable minimum overbid increment; *provided, however,* that the Debtors may not amend these Bidding Procedures, the Bidding Procedures Order or the bidding process to reduce or otherwise modify their obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court.  All such modifications and additional rules will be communicated in advance to each of the Consultation Parties and the U.S. Trustee, Acceptable Bidders and Qualified Bidders; *provided, further,* that, to the extent such modifications occur at the Auction, disclosure of such modifications shall be limited to those in attendance at the Auction. If any of the DIP Lenders, the Office of the U.S. Trustee or any official committee of unsecured creditors appointed in these cases determines in good faith that any modification to these Bidding Procedures or the Bidding Procedures Order, or any adoption of new rules, procedures or deadlines, would not be consistent with this paragraph or these Bidding Procedures or the Bidding Procedures Order, such DIP Lender, U.S. Trustee, or Committee may file an objection with the Bankruptcy Court, and no such modification or adoption shall become effective until such objection is resolved. The Debtors shall provide advance notice in writing of any such modification to the Consultation Parties and the U.S. Trustee and any Qualified Bidder, including any Stalking Horse Bidder.

All parties expressly reserve all of their rights (and do not waive any such rights) to seek Court relief with regard to the Auction, the Bidding Procedures, the Sale Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

Each reference in these Bidding Procedures and the Bidding Procedures Order to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith. All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis if they disagree with any actions or decisions made by the Debtors as part of these Bidding Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

## Consent to Jurisdiction

All Qualified Bidders at the Auction will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

## Fiduciary Matters

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor to take any action or to refrain from taking any action related to any sale transaction or with respect to these Bidding Procedures, to the extent such Debtor, board of director, board of managers, or such similar governing body reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

**EXHIBIT B**

**Form of Sale Notice**

1
2
3
4
5
6
7
8

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

☒    NEVADA COPPER, INC.
☒    NEVADA COPPER CORP.
☒    NC DITCH COMPANY LLC
☒    NC FARMS LLC
☒    LION IRON CORP.
☒    0607792 B.C. LTD.

Debtors.[1]

Lead Case No.: 24-50566-hlb
Chapter 11

Jointly Administered with:
Case No. 24-50567-hlb
Case No. 24-50568-hlb
Case No. 24-50569-hlb
Case No. 24-50570-hlb
Case No. 24-50571-hlb

Hearing Date:
Hearing Time:

9

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND**
**SALE HEARING FOR THE SALE OF SUBSTANTIALLY ALL ASSETS**

10
11
12
13
14

    **PLEASE TAKE NOTICE** that on [___], 2023, the United States Bankruptcy Court for the District of Nevada (the "Court") entered the *[Order (I)(A) Approving the Auction and Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines and an Auction, (D) Approving the Form and Manner of Notice Thereof, (E) Approving the Form APA, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets and (D) Granting Related Relief* [Docket No. [___]]] (the "**Bidding Procedures Order**")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**").

15
16
17
18

    **PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "**Auction**") of the Assets **on September 10, 2024, at 12:00 p.m. (prevailing Eastern Time)** at the New York offices of Allen Overy Shearman Sterling US LLP, 599 Lexington Avenue, New York, NY 10022, or such other location announced to the bidders and Consultation Parties.

19
20
21

    **PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, and any other parties as the Debtors may determine to include in their reasonable discretion, in consultation with the Consultation Parties, in each case, along with their representatives and advisors, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

22
23

    **PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction at a hearing scheduled to commence on or before **September 25, 2024, at 10:00 a.m. (prevailing Pacific Time)** (the "**Sale Hearing**") before the Honorable Judge Barnes, at the United

24
25
26
27
28

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their registration numbers in the jurisdiction in which they are organized are: Nevada Copper, Inc. (1157) (Nevada); Nevada Copper Corp. (5323) (British Columbia); 0607792 B.C. Ltd. (2524) (British Columbia); Lion Iron Corp. (2904) (Nevada); NC Farms LLC (0264) (Nevada); and NC Ditch Company LLC (4396) (Nevada).

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

States Bankruptcy Court for the District of Nevada, 300 Booth Street, 5th Floor, Courtroom 2, Reno, Nevada 89509, and telephonically.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of the Sale and each Sale Transaction must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** **on or before September 19, 2024, at 12:00 p.m. (prevailing Pacific Time)** by the following parties:

    i.     the Debtors, c/o Nevada Copper, Inc., 61 E. Pursel Lane, P.O. Box 1640, Yerington, NV 89447 (Attn:  Gregory J. Martin (gjmartin@nevadacopper.com));

    ii.    the Debtors' counsel, Allen Overy Shearman Sterling US LLP, 599 Lexington Avenue, New York, NY 10022  (Attn: Fredric Sosnick (fsosnick@aoshearman.com), Sara Coelho (sara.coelho@aoshearman.com), Cody Wright (cody.wright@aoshearman.com);

    iii.   the Debtors' investment banker, Moelis & Company, 399 Park Ave 4th Floor, New York, NY 10022 (Attn: Douglas Pierson (Douglas.Pierson@moelis.com), Zul Jamal (Zul.Jamal@moelis.com), Jay Finney (Jay.Finney@moelis.com), Patrick Loftus-Hills (Patrick.Loftus-Hills@moelis.com));

    iv.   the Office of the United States Trustee for Region 17, 300 Booth Street, Suite 3009, Reno, NV  89509 (Attn:  Jared Day (Jared.A.Day@usdoj.gov));

    v.    proposed counsel to any Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases, [●], and [●], and (b) [●], [ADDRESS], Attn: [●];

    vi.   the DIP Lenders, c/o Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Brad Kahn; and 2001 K Street NW, Washington D.C. 20006, Attn:  Kate Doorley; and

    vii.   counsel to any Stalking Horse Bidder, [●], and [●], and (b) [●], [ADDRESS], Attn: [●].

**PLEASE TAKE FURTHER NOTICE Copies of the Bidding Procedures Motion, Bidding Procedures Order, Bidding Procedures, the Form APA, and any other documents filed in the Debtors' chapter 11 cases are available upon request, by calling the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC (i) for U.S. parties, toll-free at (877) 635-8338, or (ii) for non-U.S. parties, at +1 (971) 306-8096, or by visiting the Debtors' restructuring website at https://dm.epiq11.com/case/nevadacopper.**

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR A SALE TRANSACTION, AS APPLICABLE, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

Dated this __th day of _____ 2024.

McDONALD CARANO LLP

*/s/ Ryan J. Work*
Ryan J. Works (NSBN 9224)
Amanda M. Perach (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102

ALLEN OVERY SHEARMAN STERLING US LLP
Fredric Sosnick (NYSBN 2472488) (*admitted pro hac vice*)
Sara Coelho (NYSBN 4530267) (*admitted pro hac vice*)
599 Lexington Avenue
New York, New York 10022

*Proposed Counsel to the Debtors and Debtors in Possession*

**EXHIBIT C**

**Form of Assumption and Assignment Notice**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Lead Case No.: 24-50566-hlb |
| | Chapter 11 |
| ☒    NEVADA COPPER, INC. | |
| ☒    NEVADA COPPER CORP. | Jointly Administered with: |
| ☒    NC DITCH COMPANY LLC | Case No. 24-50567-hlb |
| ☒    NC FARMS LLC | Case No. 24-50568-hlb |
| ☒    LION IRON CORP. | Case No. 24-50569-hlb |
| ☒    0607792 B.C. LTD. | Case No. 24-50570-hlb |
| | Case No. 24-50571-hlb |
| Debtors.[1] | |
| | Hearing Date: |
| | Hearing Time: |

**NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT**
**OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
> OR ONE OF YOUR AFFILIATES ARE A COUNTERPARTY TO AN
> EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
> OF THE DEBTORS AS SET FORTH ON **EXHIBIT A** ATTACHED HERETO.

**PLEASE TAKE NOTICE** that on [___], 2024, the United States Bankruptcy Court for the District of Nevada (the "Court") entered the [*Order (I) Approving the Auction and Bidding Procedures, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. [___]]] (the "Bidding Procedures Order") in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").[2]

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder the contract or agreement listed on **Exhibit A** to which you are a counterparty, upon approval of the Sale Transaction. The Debtors have conducted a review of their books and records and have determined that the Cure Payments for unpaid monetary obligations under such Executory Contract or Unexpired Lease is as set forth on **Exhibit A**. **You are receiving this Assumption and Assignment Notice because you may be a counterparty to a Contract or Lease (a "Counterparty") that is proposed to be assumed and assigned to the Successful Bidder in connection with the Sale.**

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Payments, object to a proposed assignment to the Successful Bidder of any Executory Contract or Unexpired Lease, or dispute the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their registration numbers in the jurisdiction in which they are organized are: Nevada Copper, Inc. (1157) (Nevada); Nevada Copper Corp. (5323) (British Columbia); 0607792 B.C. Ltd. (2524) (British Columbia); Lion Iron Corp. (2904) (Nevada); NC Farms LLC (0264) (Nevada); and NC Ditch Company LLC (4396) (Nevada).

[2]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or the Bidding Procedures.

governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payments, state the correct Cure Payments alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served and **actually received no later than [Tuesday, August 20, 2024, at 12:00 p.m. (prevailing Pacific Time)]** (the "**Assumption and Cure Objection Deadline")** by the Court and the following parties:

viii.   the Debtors, c/o Nevada Copper, Inc., 61 E. Pursel Lane, P.O. Box 1640, Yerington, NV 89447 (Attn:  Gregory J. Martin (gjmartin@nevadacopper.com));

ix.   the Debtors' counsel, Allen Overy Shearman Sterling US LLP, 599 Lexington Avenue, New York, NY 10022 (Attn: Fredric Sosnick (fsosnick@aoshearman.com), Sara Coelho (sara.coelho@aoshearman.com), Cody Wright (cody.wright@aoshearman.com);

x.   the Debtors' investment banker, Moelis & Company, 399 Park Ave 4th Floor, New York, NY 10022 (Attn: Douglas Pierson (Douglas.Pierson@moelis.com), Zul Jamal (Zul.Jamal@moelis.com), Jay Finney (Jay.Finney@moelis.com), Patrick Loftus-Hills (Patrick.Loftus-Hills@moelis.com));

xi.   the Office of the United States Trustee for Region 17, 300 Booth Street, Suite 3009, Reno, NV  89509 (Attn:  Jared Day (Jared.A.Day@usdoj.gov));

xii.   proposed counsel to any Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases, [●], and [●], and (b) [●], [ADDRESS], Attn: [●];

xiii.   the DIP Lenders, c/o Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Brad Kahn; and 2001 K Street NW, Washington D.C. 20006, Attn:  Kate Doorley; and

xiv.   counsel to any Stalking Horse Bidder, [●], and [●], and (b) [●], [ADDRESS], Attn: [●].

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Payments, (b) the proposed assignment and assumption of any Executory Contract or Unexpired Lease, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Payments as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Payments are due under the Executory Contract or Unexpired Lease, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Executory Contract or Unexpired Lease or related Cure Payments in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, **the mere listing of any Executory Contract or Unexpired Lease on the Contract Assumption Notice or any Supplemental Assumption Notice does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed by the Debtors at any time or assumed and**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**assigned, and all rights of the Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved.** Moreover, the Debtors explicitly reserve the right, in their reasonable discretion, to seek to reject or assume each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Executory Contracts or Unexpired Leases or the validity, priority, or amount of any claims of a counterparty to any Contract against the Debtors that may arise under such Executory Contract or Unexpired Lease, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE Copies of the Bidding Procedures Motion, Bidding Procedures Order, Bidding Procedures, the Form APA, and any other documents filed in the Debtors' chapter 11 cases are available upon request, by calling the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC (i) for U.S. parties, toll-free at (877) 635-8338, or (ii) for non-U.S. parties, at +1 (971) 306-8096, or by visiting the Debtors' restructuring website at https://dm.epiq11.com/case/nevadacopper.**

Dated this __th day of _____ 2024.

McDONALD CARANO LLP

*/s/ Ryan J. Work*
Ryan J. Works (NSBN 9224)
Amanda M. Perach (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102

ALLEN OVERY SHEARMAN STERLING US LLP
Fredric Sosnick (NYSBN 2472488) (*admitted pro hac vice*)
Sara Coelho (NYSBN 4530267) (*admitted pro hac vice*)
599 Lexington Avenue
New York, New York 10022

*Proposed Counsel to the Debtors and Debtors in Possession*

**EXHIBIT D**

**Form APA**