**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Lead Case No.: 24-50566-hlb |
| | Chapter 11 |
| ☒ NEVADA COPPER, INC. | |
| ☒ NEVADA COPPER CORP. | Jointly Administered with: |
| ☒ NC DITCH COMPANY LLC | Case No. 24-50567-hlb |
| ☒ NC FARMS LLC | Case No. 24-50568-hlb |
| ☒ LION IRON CORP. | Case No. 24-50569-hlb |
| ☒ 0607792 B.C. LTD. | Case No. 24-50570-hlb |
| | Case No. 24-50571-hlb |
| Debtors.[1] | |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS,
METHODOLOGY AND DISCLAIMERS REGARDING DEBTORS' SCHEDULES
OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

**Introduction**

Nevada Copper, Inc. ("*NCI*" or the "*Company*"), and its affiliates, as debtors and debtors in possession (collectively, the "*Debtors*") in the above-captioned chapter 11 cases (the "*Chapter 11 Cases*"), submit their schedules of assets and liabilities (the "*Schedules*") and statements of financial affairs (the "*Statements*" and, together with the Schedules, the "*Schedules and Statements*") pursuant to section 521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "*Bankruptcy Code*") and Rule 1007 of the Federal Rules of Bankruptcy Procedure.

On June 10, 2024 (the "*Petition Date*"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Nevada (the "*Bankruptcy Court*"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being administered jointly under case number 24-50566. The Debtors are authorized to operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Schedules and Statements were prepared by the Debtors' management and are unaudited. While those members of management responsible for the preparation of the Schedules and Statements have made a reasonable effort to ensure that the Schedules and Statements are accurate and complete based on information known to them at the time of preparation after reasonable inquiries, inadvertent errors or omissions may exist and/or the subsequent receipt of information may result in material changes in financial and other data contained in the Schedules and Statements. Accordingly, the Debtors reserve their right to amend and/or supplement their

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their registration numbers in the jurisdiction in which they are organized are: Nevada Copper, Inc. (1157) (Nevada); Nevada Copper Corp. (5323) (British Columbia); 0607792 B.C. Ltd. (2524) (British Columbia); Lion Iron Corp. (2904) (Nevada); NC Farms LLC (0264) (Nevada); and NC Ditch Company LLC (4396) (Nevada).

Schedules and Statements from time to time as may be necessary or appropriate; but there can be no guarantees that the Debtors will do so.

The Debtors and their agents, attorneys and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. Except as expressly required by the Bankruptcy Code, the Debtors and their agents, attorneys, and financial advisors do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized. In no event shall the Debtors or their agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages. These *Global Notes and Statements of Limitations, Methodology and Disclaimers Regarding Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (these "**Global Notes**") are incorporated by reference in, and comprise an integral part of, the Schedules and Statements, and should be referred to and reviewed in connection with any review of the Schedules and Statements. In the event that the Schedules and Statements differ from these Global Notes, these Global Notes shall control.

## Global Notes and Overview of Methodology

1. **Reservation of Rights.** The Debtors reserve the right to dispute, or to assert setoff or other defenses to, any claim reflected in the Schedules and Statements, including, without limitation, as to amount, liability, and classification. The Debtors also reserve all rights with respect to the values, amounts, and characterizations of the assets and liabilities listed in their Schedules and Statements, and the right to amend the Schedules and Statements in any respect. The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have, and nothing contained in or omitted from these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or causes of action or in any way prejudice or impair the assertion of such claims.

2. **Estimates and Assumptions.** To prepare and file the Schedules and Statements in accordance with the deadline under the *Order (I) Extending the Time to File Schedules and Statements (II) Authorizing the Filing of a Consolidated Creditor Matrix With the Debtors' Chapter 11 Petitions; and (III) Modifying the Requirement to File a Complete List of Equity Holders* [ECF No. 102], management was required to make certain estimates and assumptions that affected the reported amounts of assets and liabilities. The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

3.  **Basis of Presentation.**  The Schedules and Statements reflect the separate assets and liabilities of each individual Debtor.  For financial reporting purposes, the Debtors have historically prepared consolidated financial statements.  The majority of the Debtors' operations occur through NCI.

These Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("**GAAP**"), nor are they intended to reconcile to the financial statements previously distributed to lenders, major creditors, or various equity holders on an intermittent basis.  It should also be noted that the Debtors use a consolidated cash management system through which the Debtors pay substantially all liabilities and expenses.

The Schedules and Statements have been signed by Gregory J. Martin, Interim President and Chief Executive Officer for the Company.  In reviewing and signing the Schedules and Statements, Mr. Martin necessarily relied upon the efforts, statements, and representations of the accounting and non-accounting personnel located at the Debtors' offices who report to, or work with, Mr. Martin, either directly or indirectly.  Mr. Martin has not, and could not have, personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors.

4.  **Date of Valuations.**  Except as otherwise noted, all liabilities, cash, inventory and vendor debit balances set forth in the Schedules and Statements are set forth as of the Petition Date.  Unless otherwise noted, all values are stated in United States currency.  The Debtors made a reasonable effort to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the Debtors may modify the allocation of liabilities between the prepetition and postpetition periods and amend the Schedules and Statements accordingly.

5.  **Book Value.**  Except as otherwise noted, each asset and liability of each Debtor is shown on the basis of net book value of the asset or liability in accordance with such Debtor's accounting books and records.  Therefore, unless otherwise noted, the Schedules and Statements are not based upon any estimate of the current market values of the Debtors' assets and liabilities, which may not correspond to book values.  It would be cost prohibitive and unduly burdensome to obtain current market valuations of the Debtors' property interests.  Except as otherwise noted, the Debtors' assets are presented, in detail, as they appear on the Debtors' accounting sub-ledgers.  As such, the detail may include error corrections and value adjustments (shown as negative values or multiple line items for an individual asset).  The Debtors believe that certain of their assets, including certain owned property and intangibles, may have been significantly impaired by, among other things, the commencement of the Chapter 11 Cases. The Debtors have not yet formally evaluated the appropriateness of the carrying values ascribed to their assets prior to the Petition Date.

6. **Property and Equipment.** Unless otherwise indicated, owned property (including real property) and equipment are stated at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors. Any such leases are set forth in the Schedules and Statements. Nothing in the Schedules and Statements is or should be construed as an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to same.

7. **Causes of Action.** The Debtors have made their best efforts to set forth known causes of action against third parties as assets in their Schedules and Statements. The Debtors reserve all of their rights with respect to causes of action they may have, whether disclosed or not disclosed, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such causes of action.

8. **Litigation.** Certain litigation actions (collectively, the "*Litigation Actions*") reflected as claims against a particular Debtor may relate to any of the other Debtors. The Debtors made reasonable efforts to accurately record the Litigation Actions in the Schedules and Statements of the Debtor(s) that is party to the Litigation Action. The inclusion of any Litigation Action in the Schedules and Statements does not constitute an admission by the Debtors of liability, the validity of any Litigation Action, or the amount of any potential claim that may result from any claims with respect to any Litigation Action, or the amount and treatment of any potential claim resulting from any Litigation Action currently pending or that may arise in the future.

9. **Application of Vendor Credits.** In the ordinary course of their businesses, the Debtors apply credits against amounts otherwise due to vendors. These credits arise because, among other things, (i) materials ordered and paid for may not be delivered, (ii) materials delivered may be damaged or unusable, (iii) the applicable vendor provided volume rebates and cash discounts; and (iv) the existence of quantity and/or shipping variances and violations. Certain of these credits are subject to change. Vendor claims are listed at the amounts entered on the Debtors' books and records, which may or may not all reflect credits or allowances due from such creditors to the Debtors. The Debtors reserve all of their rights with respect to such credits and allowances.

10. **Claims.** Certain of the Debtors' Schedules list creditors and set forth the Debtors' estimate of the claims of creditors as of the Petition Date. The claim amounts reflected on the Schedules may include the Debtors' estimates for vendor charges not yet invoiced. By estimating certain invoices, the Debtors are not representing that they have sought to identify and estimate all uninvoiced vendor charges.

The Debtors intentionally have not included "non-cash" accruals, *i.e.*, accruals to recognize expense or liability over multiple periods where no specific obligation to perform is established, such as accruals to equalize lease payments, in the Schedules and Statements.

The Bankruptcy Court has authorized, but not directed, the Debtors to, among other things, (i) pay certain prepetition wages, salaries, employee benefits, and other obligations to employees, and (ii) make payments to certain vendors. While the Debtors have made their

best efforts to reflect the claims, by vendor, excluding these various adjustments while including the vendor credits discussed above, the actual unpaid claims of creditors that may be allowed in these cases may differ from the amounts set forth in the Schedules and Statements. Moreover, the Debtors have not attempted to reflect any alleged recoupments rights.

Any failure to designate a claim listed on a Debtor's Schedule as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that the claim is not "disputed," "contingent," or "unliquidated." The Debtors reserve the right to (i) object to or otherwise dispute or assert setoff rights, crossclaims, counterclaims or defenses to, any claim reflected on the Schedules as to amount, liability, classification or otherwise, or (ii) otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated."

The claims listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code and the Debtors reserve all of their rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code. The Debtors further reserve all rights to challenge the characterization of the structure of any transaction or any right, document or instrument related to any creditor's claim.

The Debtors have excluded potential rejection damage claims of counterparties to executory contracts and unexpired leases that may or may not be rejected, and to the extent such damage claims exist, the Debtors reserve all rights to contest such claims as asserted.

To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval. To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, such claims shall be satisfied and the Debtors also reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, but shall not be obligated to do so.

11.    **Employee Claims.** The Bankruptcy Court has authorized the Debtors, on an interim basis, to pay certain prepetition wages, salaries, benefits and other obligations to employees following entry of the interim order pursuant to the *Debtors' Motion for Entry of an Order Authorizing the Debtors to (I) Pay Prepetition Employee Wages, Salaries, and Other Compensation, (II) Reimburse Prepetition Business Expenses, (III) Continue Prepetition Employee Benefits Programs, (IV) Make Payments for Which Prepetition Payroll Deductions Have Been Withheld and Pay Certain Employment-Related Taxes, (V) Pay Amounts That Were Awarded Under the Debtors' 2023 Short Term Incentive Program, and (VI) Pay all Costs and Expenses Incident to the Foregoing* [ECF No. 5] (the "***Wages Motion***"). With the exception of any prepetition severance or certain deferred compensation, the Debtors currently expect that many prepetition employee claims for wages, salaries, benefits and other obligations either have been paid or will be paid in the ordinary course of business following the final hearing on the Wages Motion and the Bankruptcy Court's entry of the final order granting such relief. Notwithstanding the

foregoing, the Debtors reserve their rights to (i) evaluate whether to modify or terminate any employee plan or program and (ii) modify or terminate, with respect to discretionary obligations, or seek to modify or terminate any such plans or programs.

12. **Insiders.**  For purposes of the Schedules and Statements, the Debtors defined "insiders" as such term is defined in section 101(31) of the Bankruptcy Code.  Persons listed as "insiders" have been included for informational purposes only, and the inclusion of them in the Schedules and Statements shall not constitute an admission that such persons are insiders for purposes of section 101(31) of the Bankruptcy Code.  Moreover, the Debtors do not take any position with respect to:  (i) any insider's influence over the control of the Debtors; (ii) the management responsibilities or functions of any such insider; (iii) the decision making or corporate authority of any such insider; or (iv) whether the Debtors or any such insider could successfully argue that he or she is not an "insider" under applicable law or with respect to any theories of liability or for any other purpose.

13. **Intercompany Items.**  For purposes of the Schedules and Statements, the Debtors have reported unsecured intercompany payables and receivables in Schedules A/B-11 and E/F Part 2, respectively.  To the extent that a Debtor owes an intercompany payable, it is reported on Schedule F as a liability of such Debtor. To the extent that a Debtor has an intercompany receivable, it is reported on Schedule B as an asset of such Debtor.

14. **Executory Contracts**.  The Debtors have not set forth executory contracts as assets in the Schedules and Statements. The Debtors' executory contracts have been set forth in Schedule G. Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so due to the complexity and size of the Debtors' businesses. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including, without limitation, the right to amend, supplement, or otherwise modify Schedule G.

15. **Intellectual Property**.  Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another. Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

16. **Guarantees and Other Secondary Liability Claims.**  The Debtors have exercised reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "Guarantees") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Where such Guarantees have been

identified, they have been included in the relevant Schedule H for the Debtor or Debtors affected by such Guarantees. However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements may have been inadvertently omitted. The Debtors reserve all of their rights to amend, supplement, and otherwise modify the Schedules to the extent that additional Guarantees are identified.

### Specific Disclosures with Respect to Schedules

### Schedule A/B

**Part 2:** Amounts are stated at their net book value as of May 31, 2024. First Insurance is prepaid as of June 9, 2024.

**Part 5:** The Debtors' inventory on the Petition Date includes (i) stockpiled ore, (ii) copper concentrate, and (iii) consumables used in mining and processing activity. The Company had stockpiled ore carried at nil value after the net realizable value adjustment ("*NRV*"). The Company had 293.18 dry metric tons of copper concentrate inventory which was valued at $497,900 after NRV. The detailed listing for consumables inventory at the Petition Date is attached.

The debtors do not purchase "finished goods" inventory, as any such balance derives from purchased copper concentrate considered available for shipment.

**Part 7:** Information technology software is stated at net book value as of May 31, 2024. The Debtors own other furniture, equipment and software, but these assets are fully depreciated and have a book value of $0. Therefore, these assets have been excluded from this schedule.

**Part 8:** The assets included in this Schedule include the processing plant, the underground mine and surface infrastructure at the mine site, and leased and owned mobile equipment, and are stated at their net book value as of May 31, 2024. The processing plant and the underground and surface infrastructure are not yet ready for use as intended by management and are therefore not depreciated. Certain costs capitalized for accounting purposes and impairments recognized in books are not reflected in the schedule.

**Part 9**: The Debtors' included real property owned by the Debtors, and related real property rights, including water rights, but are unable to place a specific value on such property at this time.

**Part 10:** The Debtors do not have a recent valuation for the items listed in Part 10. Accordingly, the Debtors have not listed the value of such items because the values on the Debtors' books and records may not accurately reflect these items' market value. However, the Debtors have listed patented and unpatented mining claims, including land patents and unpatented lode mining claims.

**Part 11:** This Schedule includes net operating losses and intercompany receivables, with accompanying payables included in Schedule E/F Part 2. The Debtors have not included the various costs of construction that are included in the Debtors' books and records as assets in these Schedules, such as costs for construction that is or was in process for surface infrastructure or underground development.

The Debtors attempted to list known causes of action and other claims.  Potential preference actions and/or fraudulent transfer actions were not listed because the Debtors have not yet completed an analysis of such potential claims.  The Debtors' failure to list any cause of action, claim, or right of any nature is not an admission that such cause of action, claim, or right does not exist, and should not be construed as a waiver of such cause of action, claim, or right.

### Schedule D

Except as otherwise ordered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection or immunity from avoidance of any lien purported to be granted or perfected in any specific asset for the benefit of a secured creditor listed on Schedule D of any Debtor.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any transaction or any right, document or instrument (including without limitation, any intercompany agreement) related to such creditor's claim.

In certain instances, a Debtor may be a co-obligor with respect to scheduled claims of other Debtors.  No claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are or may be otherwise satisfied or discharged.

The descriptions provided in Schedule D are intended only to be a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens.  Nothing in these Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

Except as specifically stated herein, real property lessors, utility companies and other parties which may hold security deposits have not been listed on Schedule D.  The Debtors have not included parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.

Advanced Payment Facility to Concord Resources Limited does not reflect deliveries of concentrate that were invoiced after petition, subsequently reducing the post-petition balance.

Capital lease balances are included, net of payments, as of May 31, 2024.  All secured debt facilities are included with accrued interest as of the Petition Date.

### Schedule E/F

Certain of the claims of state and local taxing authorities set forth in Schedule E ultimately may be deemed to be secured claims pursuant to state or local laws.  Certain of the claims owing to various taxing authorities to which the Debtors may be liable may be subject to ongoing audits.  The Debtors reserve their right to dispute or challenge whether claims owing to various taxing authorities are entitled to priority status, and the listing of any claim on Schedule E/F Part 1 does not constitute an admission that such claim is entitled to priority status pursuant to section 507 of the Bankruptcy Code.

In certain instances, a Debtor may be a guarantor with respect to the scheduled claims of other Debtors.  No claim set forth on Schedule E/F of any Debtor is intended to acknowledge claims of creditors that may be otherwise satisfied or discharged.

Schedule E/F does not include certain deferred charges, deferred liabilities, accruals, or general reserves, including self-insured health insurance plan liabilities.  Such amounts are, however, reflected on the Debtors' books and records where required in accordance with GAAP.  Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date.

As noted above, Schedule E/F Part 1 excludes certain accruals, such as prepetition vacation accruals, bonus accruals and certain non-cash equity-based compensation to insiders.

Schedule E/F Part 2 balances are based on recorded prepetition accounts payable ("**AP**") for each Debtor.  AP information was pulled from the Company's accounting system on July 4, 2024, to ensure it had captured all prepetition invoices entered into as of such date.  Schedule E/F Part 2 further incorporates goods received not yet invoiced ("**GRNI**") balances as of the Petition Date and additional accruals for incurred liabilities not yet reflected in AP.  Vendors with both AP and GRNI balances as of the Petition Date are listed as unliquidated, along with the associated AP balance.  Vendors with only GRNI balances as of the Petition Date are listed as unliquidated and at an undetermined amount.  Certain AP balances of Debtor Nevada Copper Corp. are translated using CAD to USD spot rates as of the Petition Date.  Balances are presented net of available prepaid balances.

Included in Schedule E/F are balances expected to be paid subsequent to entry of final orders pursuant to the Wages Motion and the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Their Prepetition Insurance Policies, (B) Continue Their Prepetition Surety Bond Program, and (C) Enter Into new Premium Financing Agreements and (II) Granting Related Relief* [ECF No. 8] (the "**Insurance Motion**").

**Item 4**:  The Debtors have listed their known creditors in Schedule E/F.  To the extent attorneys have entered appearances on behalf of such creditors, those appearances are noted on the docket of these Chapter 11 Cases and are not separately listed in Item 4.

### Schedule G

The businesses of the Debtors are complex and, while every effort has been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.  The Debtors hereby reserve all of their rights to (i) dispute the validity, status or enforceability of any contracts, agreements or leases set forth in Schedule G and (ii) amend or supplement such Schedule as necessary.  Furthermore, the Debtors reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on the Schedules, including, without limitation, the right to dispute or challenge the characterization or the structure of any right, transaction, document or instrument.  The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or an unexpired lease.

The contracts, agreements, and leases listed on Schedule G may have expired or been terminated, or may have been modified, amended or supplemented from time to time by various amendments,

restatements, waivers, estoppel certificates, letter and other documents, instruments and agreements that may not be listed therein. Certain of the real property leases listed on Schedule G may contain renewal options, guarantees of payment, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth on Schedule G. Additionally, the Debtors may be parties to various other agreements concerning real property, such as easements, rights of way, subordination, non-disturbance, supplemental agreements, amendments/letter agreements, title documents, consents, site plans, maps and other miscellaneous agreements. Such agreements, if any, may not be set forth in Schedule G. Certain of the agreements listed on Schedule G may be in the nature of conditional sale agreements or secured financings.

Schedule G does not include secured and unsecured debt agreements, intercreditor agreements or intercompany debt agreements. All insurance policies listed in the Insurance Motion are included out of an abundance of caution.

**Schedule H**

Due to their voluminous nature, and to avoid unnecessary duplication, the Debtors have not included on Schedule H debts for which more than one Debtor may be liable if such debts were already reflected on Schedules E/F or G for the respective Debtors subject to such debt.

To the extent these Global Notes include notes specific to Schedules D through G, such notes also apply to the co-debtors listed in Schedule H.

**<u>Specific Disclosures with Respect to Statements</u>**

**<u>Question 1</u>**: Gross revenue includes unaudited gross revenue from January 1, 2024, to June 9, 2024. Fiscal year gross revenue is based on public financials. Gross revenue excludes accrued interest on intercompany loans.

**<u>Question 2</u>**: Historical non-business revenue includes items such as interest income or gain on trade receivables at fair value.

**<u>Question 3</u>**: Included are interest payments to Concord Resources Limited, per the structure of the offtake agreement in which actual cash disbursement for interest occurs when production targets are not met.

**<u>Question 4</u>**: Certain amounts were converted from CAD to USD using spot rates as of the Petition Date.

**<u>Question 6</u>**: The Debtors have used their best efforts to reflect setoffs made by creditors without permission, that they are aware of. However, there may be instances where such a setoff has occurred without the Debtors' knowledge.

**<u>Question 7</u>**: This Schedule does not include internal employee complaints that have not given rise to litigation or involvement of external regulatory authorities.

The Mine Safety and Health Administration ("**MSHA**") performs routine inspections at the mining site throughout the year. Inspection documents are provided to the Company contemporaneous with any inspection, and the Company then addresses any deficiencies noted or improvements requested.  Only formal MSHA proceedings are included on this Schedule.

**Question 11**:  Payments to Torys LLP are intermingled with non-bankruptcy prepetition services. A total of CAD $925,000 was paid across four prepetition transactions on April 22, 2024, May 10, 2024, May 23, 2024, and June 7, 2024. The full amount is reflected in the Schedule, translated using the CAD to USD spot rate as of June 9, 2024.

**Question 16**:  The Debtors collect personally identifiable information, such as address and contact information, as it pertains to Concord Resources Limited.  The Debtors do not collect Social Security Numbers.

**Questions 22-24**:  The responses to these questions do not include routine investigations or inspections from governmental units concerning compliance with environmental laws.  The responses also do not list routine reports, submissions, communications or proceedings resulting from normal operations, where such reports, submissions, communications or proceedings were made in compliance with regulatory requirements, such as monthly discharge monitoring reports, toxic release inventory submissions and submissions concerning air emissions.

Additionally, the responses to these questions do not include proceedings related to non-environmental laws, such as mining laws, occupational safety and health laws or transportation laws.  The responses also do not include notices issued to previous owners of property now owned by the Debtors.

In some cases, the Debtors may no longer possess relevant records because statutory document retention periods have passed, or records may no longer be complete or reasonably accessible or reviewable. Further, some individuals who may have once possessed responsive information are no longer employed by the Debtors.  For these reasons, it may not be possible to identify and supply all the requested information that is responsive to Questions 22–24.

**Question 26d**:  From time to time, the Debtors provided financial statements in the ordinary course of business to certain parties for business, statutory, credit, financing and other reasons.  Recipients have included regulatory agencies, financial institutions, investment banks, vendors, debtholders and their legal and financial advisors.  Additionally, the Debtors may be subject to confidentiality obligations. To protect the sale process and comply with any confidentiality restrictions applicable to the Debtors, potential purchasers are not listed in response to this question.

**Question 27**:  Included are inventories associated with year-end financial statement audits and associated net book values.  This Schedule excludes cycle counts, which are routinely performed throughout the fiscal year.

[*End of Global Notes, Schedules and Statements begin on the following page*]

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

|  |  |
|---|---|
| **In re** ) | **Chapter 11** |
| ) | |
| **NEVADA COPPER, INC., et al.** ) | **Case No. 24-50566** |
| ) | |
| **Debtors.** ) | **(Jointly Administered)** |

## STATEMENT OF FINANCIAL AFFAIRS FOR

### Nevada Copper Corp.

### CASE NO. 24-50567

Nevada Copper Corp.                                                                    Case Number: 24-50567

| Part 1: | Income |
|---------|--------|

1.  **Gross Revenue from business**

☑ None.

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|

Nevada Copper Corp.                                                    Case Number: 24-50567

| **Part 1:** | **Income** |

2. **Non-business revenue**

Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

☑ None.

| | Description of Sources of Revenue | Gross Revenue (Before Deductions and Exclusions) |
| --- | --- | --- |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

3. **Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers — including expense reimbursements — to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
|---|---|---|---|
| 3.1 DMI DIGITAL MEDIA INNOVATIONS CANADA, INC<br>ATTN: ERIK CARLSON<br>PO BOX 60171<br>RPO FRASER<br>VANCOUVER, BC V5W 4B5<br>CANADA | 03/14/2024<br>03/28/2024<br>03/28/2024 | $4,911.33<br>$16,446.93<br>$7,476.16 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL DMI DIGITAL MEDIA INNOVATIONS CANADA, INC** | | **$28,834.42** | |
| 3.2 FIRMEX INC<br>110 SPADINA AVENUE SUITE 700<br>TORONTO, ON M5V 2K4<br>CANADA | 04/22/2024 | $18,000.81 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL FIRMEX INC** | | **$18,000.81** | |
| 3.3 FIRST INSURANCE FUNDING CORP.<br>120 BREMNER BOULEVARD, SUITE 800<br>TORONTO, ON M5J 0A8<br>CANADA | 03/22/2024<br>03/22/2024<br>04/05/2024<br>05/07/2024<br>06/05/2024 | $52,338.77<br>$300,769.50<br>$52,338.77<br>$52,338.77<br>$52,338.77 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☑ Other  Insurance Premium Financing _____ |
| **TOTAL FIRST INSURANCE FUNDING CORP.** | | **$510,124.58** | |
| 3.4 MARSH CANADA LIMITED<br>120 BREMNER BLVD SUITE 800<br>TORONTO, ON M5J 0A8<br>CANADA | 03/25/2024<br>05/01/2024 | $35,000.00<br>$382,125.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL MARSH CANADA LIMITED** | | **$417,125.00** | |
| 3.5 PRICEWATERHOUSECOOPERS LLP<br>250 HOWE STREET, SUITE 700<br>VANCOUVER, BC V6C 3S7<br>CANADA | 06/07/2024 | $91,152.98 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other _____ |
| **TOTAL PRICEWATERHOUSECOOPERS LLP** | | **$91,152.98** | |

Nevada Copper Corp.                                                                    Case Number: 24-50567

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

| | | | | |
|---|---|---|---|---|
| 3.6 | TSX INC.<br>THE EXCHANGE TOWER, 130 KING STREET<br>TORONTO, ON M5X 1J2<br>CANADA | 03/28/2024 | $27,431.78 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other _____ |
| | | **TOTAL TSX INC.** | **$27,431.78** | |

Nevada Copper Corp.                                                                                                    Case Number: 24-50567

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|-----------------------------------------------------------|

4.  **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reasons for Payment |
|---|---|---|---|
| 4.1  ALBANESE, TOM (DIRECTOR, BOARD CHAIRMAN)<br>15 WERTSVILLE ROAD<br>HILLSBOROUGH, NJ 08844-3320 | 06/07/2024 | $58,706.41 | EXPENSE REIMBURSEMENT |
| **TOTAL ALBANESE, TOM (DIRECTOR, BOARD CHAIRMAN)** | | **$58,706.41** | |

Nevada Copper Corp.                                                                                    Case Number: 24-50567

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

| | | | |
|---|---|---|---|
| 4.2 MARTIN, GREG (INTERIM PRESIDENT AND CEO)<br>2576 WEST 19TH AVE<br>VANCOUVER, BC V6L 1C7<br>CANADA | 06/15/2023 | $15,781.23 | GROSS WAGES |
| | 06/30/2023 | $15,576.88 | GROSS WAGES |
| | 07/10/2023 | $12,857.14 | STIP RSU AWARD |
| | 07/14/2023 | $15,704.18 | GROSS WAGES |
| | 07/21/2023 | $5,359.08 | EXPENSE REIMBURSEMENT |
| | 07/31/2023 | $15,618.92 | GROSS WAGES |
| | 08/15/2023 | $15,544.29 | GROSS WAGES |
| | 08/31/2023 | $15,734.07 | GROSS WAGES |
| | 09/15/2023 | $15,692.42 | GROSS WAGES |
| | 09/28/2023 | $8,150.89 | EXPENSE REIMBURSEMENT |
| | 09/29/2023 | $15,525.19 | GROSS WAGES |
| | 10/13/2023 | $15,649.93 | GROSS WAGES |
| | 10/31/2023 | $15,519.83 | GROSS WAGES |
| | 11/15/2023 | $5,934.66 | EXPENSE REIMBURSEMENT |
| | 11/15/2023 | $15,712.20 | GROSS WAGES |
| | 11/30/2023 | $76,408.55 | BONUS |
| | 11/30/2023 | $15,696.25 | GROSS WAGES |
| | 12/15/2023 | $15,845.10 | GROSS WAGES |
| | 12/29/2023 | $15,720.17 | GROSS WAGES |
| | 01/15/2024 | $15,581.69 | GROSS WAGES |
| | 01/25/2024 | $8,560.27 | EXPENSE REIMBURSEMENT |
| | 01/31/2024 | $15,681.47 | GROSS WAGES |
| | 02/15/2024 | $15,615.49 | GROSS WAGES |
| | 02/29/2024 | $15,524.43 | GROSS WAGES |
| | 03/15/2024 | $15,565.24 | GROSS WAGES |
| | 03/28/2024 | $15,613.70 | GROSS WAGES |
| | 04/15/2024 | $15,385.57 | GROSS WAGES |
| | 04/18/2024 | $6,209.31 | EXPENSE REIMBURSEMENT |
| | 04/30/2024 | $15,544.72 | GROSS WAGES |
| | 05/15/2024 | $15,724.41 | GROSS WAGES |
| | 05/31/2024 | $15,632.40 | GROSS WAGES |
| | 06/07/2024 | $2,056.84 | EXPENSE REIMBURSEMENT |

| | | |
|---|---|---|
| TOTAL MARTIN, GREG (INTERIM PRESIDENT AND CEO) | $500,726.50 | |

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
| --- | --- |

| | | | |
| --- | --- | --- | --- |
| 4.3  NEVADA COPPER, INC. | 06/14/2023 | $1,900,000.00 | TRANSFERS |
| 61 E. PURSEL LANE | 06/21/2023 | $2,641,200.00 | TRANSFERS |
| P.O. BOX 1640 | 06/29/2023 | $3,982,000.00 | TRANSFERS |
| YERINGTON, NV 89447 | 07/06/2023 | $2,200,000.00 | TRANSFERS |
| | 07/13/2023 | $5,553,200.00 | TRANSFERS |
| | 07/20/2023 | $1,500,000.00 | TRANSFERS |
| | 07/26/2023 | $1,600,000.00 | TRANSFERS |
| | 08/02/2023 | $1,700,000.00 | TRANSFERS |
| | 08/09/2023 | $3,700,000.00 | TRANSFERS |
| | 08/15/2023 | $1,300,000.00 | TRANSFERS |
| | 08/16/2023 | $1,923,184.55 | TRANSFERS |
| | 08/23/2023 | $6,735,577.42 | TRANSFERS |
| | 08/30/2023 | $1,000,000.00 | TRANSFERS |
| | 08/30/2023 | $1,148,992.11 | TRANSFERS |
| | 09/08/2023 | $415,000.00 | TRANSFERS |
| | 10/03/2023 | $4,570,000.00 | TRANSFERS |
| | 10/03/2023 | $3,000,000.00 | TRANSFERS |
| | 10/11/2023 | $4,200,000.00 | TRANSFERS |
| | 10/18/2023 | $2,360,800.00 | TRANSFERS |
| | 10/26/2023 | $450,000.00 | TRANSFERS |
| | 10/26/2023 | $275,000.00 | TRANSFERS |
| | 10/26/2023 | $2,059,565.99 | TRANSFERS |
| | 11/01/2023 | $2,814,514.61 | TRANSFERS |
| | 11/08/2023 | $1,600,000.00 | TRANSFERS |
| | 11/15/2023 | $3,800,000.00 | TRANSFERS |
| | 11/16/2023 | $300,000.00 | TRANSFERS |
| | 11/21/2023 | $2,260,800.00 | TRANSFERS |
| | 11/29/2023 | $753,244.94 | TRANSFERS |
| | 12/07/2023 | $2,701,000.00 | TRANSFERS |
| | 12/13/2023 | $2,963,200.00 | TRANSFERS |
| | 12/20/2023 | $1,550,972.19 | TRANSFERS |
| | 12/28/2023 | $4,301,900.00 | TRANSFERS |
| | 01/03/2024 | $2,830,000.00 | TRANSFERS |
| | 01/11/2024 | $3,401,000.00 | TRANSFERS |
| | 01/17/2024 | $3,265,000.00 | TRANSFERS |
| | 01/25/2024 | $2,301,000.00 | TRANSFERS |
| | 01/31/2024 | $1,990,238.52 | TRANSFERS |
| | 02/05/2024 | $2,625,000.00 | TRANSFERS |
| | 02/08/2024 | $485,000.00 | TRANSFERS |
| | 02/14/2024 | $1,770,000.00 | TRANSFERS |

Nevada Copper Corp.                                                                    Case Number: 24-50567

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

| | | |
|---|---|---|
| 02/21/2024 | $695,000.00 | TRANSFERS |
| 02/28/2024 | $1,200,000.00 | TRANSFERS |
| 02/29/2024 | $703,418.00 | TRANSFERS |
| 03/13/2024 | $1,172,000.00 | TRANSFERS |
| 03/15/2024 | $346,000.00 | TRANSFERS |
| 03/20/2024 | $50,000.00 | TRANSFERS |
| 03/20/2024 | $129,000.00 | TRANSFERS |
| 03/25/2024 | $465,000.00 | TRANSFERS |
| 03/27/2024 | $1,450,000.00 | TRANSFERS |
| 04/05/2024 | $320,000.00 | TRANSFERS |
| 04/10/2024 | $750,000.00 | TRANSFERS |
| 04/10/2024 | $750,000.00 | TRANSFERS |
| 04/15/2024 | $250,000.00 | TRANSFERS |
| 04/16/2024 | $243,000.00 | TRANSFERS |
| 04/22/2024 | $1,559,000.00 | TRANSFERS |
| 04/24/2024 | $1,250,000.00 | TRANSFERS |
| 04/26/2024 | $360,000.00 | TRANSFERS |
| 04/29/2024 | $150,000.00 | TRANSFERS |
| 04/30/2024 | $125,000.00 | TRANSFERS |
| 05/06/2024 | $700,000.00 | TRANSFERS |
| 05/08/2024 | $800,000.00 | TRANSFERS |
| 05/10/2024 | $1,150,000.00 | TRANSFERS |
| 05/16/2024 | $200,000.00 | TRANSFERS |
| 05/21/2024 | $300,000.00 | TRANSFERS |
| 05/22/2024 | $870,000.00 | TRANSFERS |
| 05/22/2024 | $330,000.00 | TRANSFERS |
| 05/23/2024 | $675,000.00 | TRANSFERS |
| 05/23/2024 | $440,000.00 | TRANSFERS |
| 05/24/2024 | $600,000.00 | TRANSFERS |
| 05/31/2024 | $500,000.00 | TRANSFERS |
| 06/05/2024 | $1,000,000.00 | TRANSFERS |
| 06/08/2024 | $1,054,000.00 | TRANSFERS |

**TOTAL NEVADA COPPER, INC.**      **$116,513,808.33**

| 4.4 | PALA INVESTMENTS LIMITED<br>12 CASTLE STREET<br>ST. HELIER, JE2 3RT<br>JERSEY | 12/21/2023 | $0.00 | SECURITY INTEREST IN<br>CONNECTION WITH LENDING<br>ARRANGEMENT; THIRD A&R LOAN |
|---|---|---|---|---|

**TOTAL PALA INVESTMENTS LIMITED**

**Nevada Copper Corp.**                                                                                    **Case Number: 24-50567**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

5. **Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None.

| Creditor's Name and Address | Description of the property | Date | Value of Property |
|------------------------------|----------------------------|------|-------------------|

Nevada Copper Corp.                                                                                    Case Number: 24-50567

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

6.  **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None.

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account Number | Amount |
|-----------------------------|-------------------------------------|-------------------|----------------|--------|

Nevada Copper Corp.                                                                    Case Number: 24-50567

| Part 3: | Legal Actions or Assignments |

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---|---|---|---|
| 7.1  EEOC NOTICE OF CHARGE OF DISCRIMINATION (550-2023-02362)<br>EEOC CHARGE NO.: 550-2023-02362 | EMPLOYMENT DISCRIMINATION | EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC)<br>SAN FRANCISCO DISTRICT OFFICE<br>450 GOLDEN GATE AVENUE 5 WEST, P.O BOX 36025<br>SAN FRANCISCO, CA 94102-3661 | CONCLUDED |

Nevada Copper Corp.                                                                                    Case Number: 24-50567

---

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

8. **Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None.

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of Property | Value |
|------------------------------|------------------------|-----------------------|------|-------------------------|-------|

**Nevada Copper Corp.**                                                                    **Case Number: 24-50567**

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

    ☑ None.

| Recipient's Name and Address | Recipient's Relation to Debtor | Description of the Gifts and Contributions | Dates Given | Value |
|---|---|---|---|---|

Nevada Copper Corp.                                                                    Case Number: 24-50567

| Part 5: | Certain Losses |
|---|---|

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None.

| Description of the property lost and how the lost occurred | Amount of Payments Received for the Loss | Date of Loss | Value of Property Lost |
|---|---|---|---|
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property). | | |

Nevada Copper Corp.

| Part 6: | Certain Payments or Transfers |
|---|---|

11. **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor | If not Money, Describe any Property Transferred | Dates | Value |
|---|---|---|---|---|---|
| 11.1 ALVAREZ & MARSAL CANADA ULC ATTN: AL HUTCHENS ROYAL BANK PLAZA, SOUTH TOWER 200 BAY STREET, SUITE 3501 TORONTO, ON M5J 2J1 CANADA | WWW.ALVAREZANDMARSAL.COM | | | 05/23/2024 | $100,000.00 |
| 11.2 MOELIS & COMPANY 399 PARK AVENUE, 5TH FLOOR NEW YORK, NY 10022 | WWW.MOELIS.COM | | | 06/07/2024 | $239,680.00 |
| 11.3 TORYS LLP 79 WELLINGTON ST. W., 30TH FLOOR, BOX 270 TD SOUTH TOWER TORONTO, ON M5K 1N2 CANADA | WWW.TORYS.COM | | | 06/07/2024 | $671,920.00 |

TOTAL    **$1,011,600.00**

Nevada Copper Corp.                                                                                    Case Number: 24-50567

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

12. **Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device. Do not include transfers already listed on this statement.

☑ None.

| Name of Trust or Device | Trustee | Describe any Property Transfered | Dates Transfers Were Made | Total Amount / Value |
|-------------------------|---------|----------------------------------|---------------------------|----------------------|

Nevada Copper Corp.                                              Case Number: 24-50567

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

13. **Transfers not already listed on this statement**

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None.

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|--------------------------------------------------------|------------------------|------------------------|-----------------------|

Nevada Copper Corp.

| Part 7: | Previous Locations |
|---------|--------------------|

14. **Previous Addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ None.

| Address | Dates of Occupancy |
|---------|--------------------|
| 14.1  250-200 BURRARD ST.<br>VANCOUVER, BC V6C 3L6<br>CANADA | 06/01/2022 – 06/09/2024 |
| 14.2  SUITE 910-800 WEST PENDER STREET<br>VANCOUVER, BC V6C 2V6<br>CANADA | 09/01/2020 – 05/31/2022 |
| 14.3  SUITE 598, 999 CANADA PLACE<br>VANCOUVER, BC V6C 3E1<br>CANADA | 12/01/2018 – 11/30/2021 |
| 14.4  100 WEST LIBERTY STREET, STE. 765<br>RENO, NV 89501 | 01/01/2019 – 12/31/2021 |

Nevada Copper Corp.                                                                    Case Number: 24-50567

| Part 8: | Health Care Bankruptcies |
|---|---|

15. **Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ None.

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
|---|---|---|---|---|

Nevada Copper Corp.                                                                                Case Number: 24-50567

| Part 9: | Personally Identifiable Information |
|---|---|

16.  **Does the debtor collect and retain personally identifiable information of customers?**

☐ No
☑ Yes. State the nature of the information collected and retained.

Customer name and contact information

Does the debtor have a privacy policy about that information?

☐ No
☑ Yes

Nevada Copper Corp.                                                                    Case Number: 24-50567

| Part 9: | Personally Identifiable Information |
|---------|-------------------------------------|

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

    ☐ No. Go to Part 10.
    ☑ Yes

    Describe:  Registered Retirement Savings Plan (Government of Canada)    EIN: _____

    Has the plan been terminated?

    ☑ No
    ☐ Yes

Nevada Copper Corp. | Case Number: 24-50567

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |

18. **Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None.

| Financial Institution Name and Address | Last 4 Digits of Account Number | Type of Account | Date of Closing | Last Balance |
|---|---|---|---|---|

Nevada Copper Corp.                                                                                    Case Number: 24-50567

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

19. **Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None.

| Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|

Nevada Copper Corp.                                                                                    Case Number: 24-50567

## Part 10:    Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

20. **Off-premises storage**

   List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

   ☑ None.

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|

Nevada Copper Corp.                                                                                    Case Number: 24-50567

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |

21. **Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None.

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|---|---|---|---|

Nevada Copper Corp.                                                                                        Case Number: 24-50567

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

   ☑ None.

| Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
|---|---|---|---|

Nevada Copper Corp.

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

☑ None.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|

Nevada Copper Corp.                                                                    Case Number: 24-50567

| **Part 12:** | Details About Environmental Information |
| --- | --- |

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ None.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
| --- | --- | --- | --- |

Nevada Copper Corp.                                                                          Case Number: 24-50567

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None.

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number (Do not include SSN or ITIN) | Dates Business Existed |
|---|---|---|---|
| 25.1  607792 BC LTD.<br>250 - 200 BURRARD ST.<br>VANCOUVER, BC V6C3L6<br>CANADA | FORMED PURSUANT TO REVERSE TAKE-OVER TRANSACTION WITH SHAREHOLDERS OF 607792 BC LTD. - INACTIVE | | 08/15/2006 - ONGOING |
| 25.2  LION IRON CORP.<br>61 E. PURSEL LANE<br>YERINGTON, NV | FORMED FOR PERMITTING PURPOSES - INACTIVE | | 06/04/2012 - ONGOING |
| 25.3  NEVADA COPPER INC.<br>61 E. PURSEL LANE<br>P.O. BOX 1640<br>YERINGTON, NV 89447 | BECAME SUBSIDIARY AS PART OF TRANSACTION WITH 607792 BC LTD. - OPERATING ENTITY | 20-4671157 | 02/02/2006 - ONGOING |

Nevada Copper Corp.                                                                    Case Number: 24-50567

---

**Part 13:**    **Details About the Debtor's Business or Connections to Any Business**

---

26.  **Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None.

| Name and Address | Dates of Service |
|---|---|
| 26a.1  ALPESH SURATI (DIRECTOR OF FINANCIAL REPORTING)<br>5957, 152 STREET, UNIT 43<br>SURREY, BC V3S 3K4<br>CANADA | 06/01/2022 - ONGOING |
| 26a.2  ANDREA CHIN (ASSISTANT SITE CONTROLLER)<br>3131 BROADWAY STREET<br>RICHMOND, BC V7E 2X1<br>CANADA | 03/19/2007 - ONGOING |
| 26a.3  GREG MARTIN (INTERIM PRESIDENT AND CEO)<br>2576 WEST 19TH AVE<br>VANCOUVER, BC V6L 1C7<br>CANADA | 11/21/2022 - ONGOING |
| 26a.4  MATT ANDERSON (INTERIM CFO)<br>197 CONCO DR<br>RENO, NV 89521 | 04/01/2022 - ONGOING |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

26. **Books, records, and financial statements**

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None.

| Name and Address | Dates of Service |
|---|---|
| 26b.1  PRICEWATERHOUSECOOPERS LLP<br>250 HOWE STREET<br>SUITE 1400<br>VANCOUVER, BC V6C 3S7<br>CANADA<br><sub>1</sub> | 05/04/2018 - ONGOING |

Nevada Copper Corp.                                                                    Case Number: 24-50567

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
| --- | --- |

**Footnotes - SOFA Part 13 - Question 26b**

1. Audited and reviewed financial statements

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|----------|-------------------------------------------------------------------|

26. **Books, records, and financial statements**

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None.

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1 ALPESH SURATI (DIRECTOR OF FINANCIAL REPORTING)<br>5957, 152 STREET, UNIT 43<br>SURREY, BC V3S 3K4<br>CANADA | |
| 26c.2 ANDREA CHIN (ASSISTANT SITE CONTROLLER)<br>3131 BROADWAY STREET<br>RICHMOND, BC V7E 2X1<br>CANADA | |
| 26c.3 GREG MARTIN (INTERIM PRESIDENT AND CEO)<br>2576 WEST 19TH AVE<br>VANCOUVER, BC V6L 1C7<br>CANADA | |
| 26c.4 MATT ANDERSON (INTERIM CFO)<br>197 CONCO DR<br>RENO, NV 89521 | |

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
| --- | --- |

26. **Books, records, and financial statements**

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None.

| **Name and Address** |
| --- |

26d.1  BRITISH COLUMBIA SECURITIES COMMISSION
P.O. BOX 10142, PACIFIC CENTRE
701 WEST GEORGIA STREET
VANCOUVER, BC V7Y 1L2
CANADA

26d.2  CONCORD RESOURCES
437 MADISON AVE
28TH FLOOR
NEW YORK, NY 10022

26d.3  KFW IPEX-BANK GMBH
PALMENGARTENSTRASSE 5-9
FRANKFURT AM MAIN, 60325
GERMANY

26d.4  MERCURIA INVESTMENTS US INC
20 E. GREENWAY PLAZA, SUITE 650
HOUSTON, TX 77046

26d.5  PALA INVESTMENTS LIMITED
12 CASTLE STREET
ST. HELIER, JE2 3RT
JERSEY

26d.6  TRIPLE FLAG INTERNATIONAL LTD.
CUMBERLAND HOUSE, 5TH FLOOR
1 VICTORIA STREET
HAMILTON HM 11, M5J 2S1
BERMUDA

1

**Nevada Copper Corp.**                                                                    **Case Number: 24-50567**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**Footnotes - SOFA Part 13 - Question 26d**

1. The first Tranche A-2 Funding was provided by Triple Flag International Ltd., but subsequently assigned to its affiliate, TF R&S Canada Ltd.

Nevada Copper Corp.                                                                                      Case Number: 24-50567

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ None.

| Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

  ☐ None.

| Name and Address | Position and Nature of any Interest | Percent of Interest, if any |
|---|---|---|
| 28.1  ANNA LADD-KRUGER<br>8491 FAIRDELL CRESCENT<br>RICHMOND, BC V7C 1W5<br>CANADA | DIRECTOR | |
| 28.2  CAROLYN "LINA" TANNER<br>480 SIERRA MANOR DRIVE<br>RENO, NV 89511 | GENERAL COUNSEL | |
| 28.3  CLARE DEVINCENZI<br>3020 KAUFFMANN COURT<br>WASHOE VALLEY, NV 89704 | CORPORATE SECRETARY | |
| 28.4  ELAINE DORWARD-KING<br>9161 DAYBREAKER DR<br>PARK CITY, UT 84098 | DIRECTOR | |
| 28.5  ERNEST (ERNIE) NUTTER<br>1238-200 GRANVILLE<br>VANCOUVER, BC V6C1S4<br>CANADA | DIRECTOR | |
| 28.6  GREGORY MARTIN<br>2576 WEST 19TH AVE<br>VANCOUVER, BC V6L 1C7<br>CANADA | INTERIM PRESIDENT AND CHIEF EXECUTIVE OFFICER | |
| 28.7  MATTHEW ANDERSON<br>197 CONCO DR<br>RENO, NV 89521 | INTERIM CHIEF FINANCIAL OFFICER | |
| 28.8  MICHAEL BROWN<br>C/O 15 CASTLE STREET<br>ST HELIER, JE4 8PY<br>JERSEY | DIRECTOR | |
| 28.9  MICHAEL HASSLER<br>KFW IPEX-BANK GMBH<br>PALMENGARTENSTRASSE 5-9<br>FRANKFURT AM MAIN, 60325<br>GERMANY | ADVISORY BOARD | |
| 28.10  TOM ALBANESE<br>15 WERTSVILLE ROAD<br>HILLSBOROUGH, NJ 08844-3320 | DIRECTOR, CHAIRMAN OF BOARD | |

Nevada Copper Corp.                                                                                  Case Number: 24-50567

**Part 13:**   Details About the Debtor's Business or Connections to Any Business

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

   ☐ None.

| Name and Address | Position and Nature of Interest | Period During Which Position Was Held |
|---|---|---|
| 29.1 EVGENIJ IORICH<br>ROTHUSMATT 10<br>ZUG, 6300<br>SWITZERLAND | DIRECTOR | 01/28/2016 - 06/05/2024 |
| 29.2 GUILLAME DE DARDEL<br>RUE DU RHONE 50<br>GENEVA, 1204<br>SWITZERLAND | DIRECTOR | 11/04/2022 - 06/06/2024 |
| 29.3 KATE SOUTHWELL<br>DOGGILOCHSTRASSE 76<br>KLOSTERS, 7250<br>SWITZERLAND | DIRECTOR | 10/15/2020 - 02/28/2023 |
| 29.4 RANDY BUFFINGTON<br>372 MOUNTAIN CITY HWY #12<br>ELKO, NV 89801 | DIRECTOR | 11/01/2022 - 06/09/2024 |
| 29.5 RANDY BUFFINGTON<br>372 MOUNTAIN CITY HWY #12<br>ELKO, NV 89801 | PRESIDENT AND CEO | 10/06/2024 - 06/09/2024 |
| 29.6 STEPHEN GILL<br>BRUSCHRAIN 22<br>ZUG, 6300<br>SWITZERLAND | DIRECTOR | 01/28/2016 - 06/5/2024 |

Nevada Copper Corp.                                                                    Case Number: 24-50567

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

30. **Payments, Distributions, or Withdrawals Credited or Given to Insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ None.

| Name and Address of Recipient and Relationship to Debtor | Amount | Amount Description | Dates | Reason for Providing the Value |
|---|---|---|---|---|
| 30.1  MERCURIA INVESTMENTS US, INC.<br>20 E. GREENWAY PLAZA, SUITE 650<br>HOUSTON, TX 77046 | $0.00 | 95,122,130 COMMON STOCK WARRANTS | 12/21/2023 | UNSECURED LOAN AGREEMENTS |
| **TOTAL MERCURIA INVESTMENTS US, INC.** | **$0.00** | | | |
| 30.2  PALA INVESTMENTS LIMITED<br>12 CASTLE STREET<br>ST. HELIER, JE2 3RT<br>JERSEY | $0.00 | 280,044,832 COMMON STOCK WARRANTS | 12/21/2023 | UNSECURED LOAN AGREEMENTS |
| **TOTAL PALA INVESTMENTS LIMITED** | **$0.00** | | | |

TOTAL   $0.00

Nevada Copper Corp.                                                                                    Case Number: 24-50567

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
| --- | --- |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ None.

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
| --- | --- |
| 31.1  NEVADA COPPER CORP. | 98-0631722 |

**Part 13:**   **Details About the Debtor's Business or Connections to Any Business**

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ None.

| Name of Pension Fund | Employer Identification Number of the Parent Corporation |
|---|---|

Nevada Copper Corp.                                                                    Case Number: 24-50567

| Part 14: | Signature and Declaration |
|---|---|

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on:** _____

**Signature:** _____    , _____

                                               **Name and Title**

Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

☑ No
☐ Yes